IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Office of Attorney :
General, :
    Petitioner :
 :
    v. : No. 2096 C.D. 2014
 : Argued:  September 16, 2015
The Philadelphia Inquirer, :
    Respondent :


BEFORE: HONORABLE DAN PELLEGRINI, President Judge
    HONORABLE BERNARD L. McGINLEY, Judge
    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
    HONORABLE RENÉE COHN JUBELIRER, Judge
    HONORABLE MARY HANNAH LEAVITT, Judge
    HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE ANNE E. COVEY, Judge


OPINION BY
PRESIDENT JUDGE PELLEGRINI    FILED: November 19, 2015


    The Pennsylvania Office of Attorney General (OAG) petitions for review of a determination of its designated Right-to-Know Law (RTKL)[1] Appeals Officer (Appeals Officer)[2] finding that the receipt and transmission of pornographic emails is an "activity" because it memorializes an employee's improper use of time and resources making it a "public record" within the meaning

_____

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[2] Section 503(d)(1) of the RTKL provides, in pertinent part, that the Attorney General, rather than the Office of Open Records, shall designate an appeals officer to hear appeals from the OAG's denial of a record's request under the RTKL.  65 P.S. §67.503(d)(1).

of Section 102 of the RTKL, 65 P.S. §67.102. Section 102 defines "public record" as "[a] record … of a Commonwealth … agency," and defines "record" as "[i]nformation … that documents a transaction or activity of any agency that is created, received, or retained pursuant to law or in connection with a transaction, business or activity of the agency." *Id.*

In August 2014, Amy Warden, a staff writer for the Philadelphia Inquirer (Requestor), submitted a RTKL request to the OAG seeking copies of all emails that were "of a personal nature and involve[] pornographic or otherwise inappropriate material" to or from the accounts of three former OAG employees[3] from 2009 until they left the OAG in late 2012 or early 2013, including "all recipients of the email chains that shared in this email and include the actual emails." (Reproduced Record (RR) at 1). Requestor later amplified the request to include 11 named employees[4] and all "former and current office staffers and other former and current state officials" from 2005 to the present and sought emails that violated OAG policy which prohibited using computers to access, download or distribute sexually suggestive pornographic or obscene material. (*Id.* at 5). The request again included "all participants in the email chains that shared in this email – even if that includes several hundred people – and include the actual emails, from their point of origin on." (*Id.*).

---

[3] Frank Fina, Marc Costanzo and Patrick Blessington.

[4] Frank Fina, Marc Costanzo, Patrick Blessington, Chris Abruzzo, Chris Carusone, Kevin Harley, Frank Noonan, James Barker, Bruce Beemer, Louis De Titto and Ellen Granahan.

2

The OAG's designated right-to-know Officer denied the request for the personal emails determining that:

- because a request seeking emails of a personal nature or that "are professionally inappropriate" was not sufficiently specific description as required by Section 703 of the RTKL[5] for the OAG to search and identify subject to the request. Moreover it was not sufficiently specific because in defining "pornographic," it relied on the definition of that term in Black's Law Dictionary (6th Ed.) to discern if some responsive documents exist;

- the request was burdensome because it "seeks records over an almost ten year period of time between a large universe of individuals;

- to the extent the requested "pornographic" emails exist, they were not disclosable "records" under the RTKL because their contents do not "document a transaction or activity" of the OAG and they were not "created, received, or retained" by the personnel in connection with their position as public officials to further OAG business; and

- even if the emails are "records," they are exempt from disclosure under the non-criminal investigation exemption in Section 708(b)(17)(vi)(A) of the RTKL[6] "because they have now become part of an ongoing internal investigation" of the violation of OAG policies on the appropriate use of its equipment that would reveal the progress or result of this investigation.

---

[5] 65 P.S. §67.703. Section 703 states, in relevant part, that "[a] written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested...."

[6] 65 P.S. §67.708(b)(17)(vi)(A). Section 708(b)(17)(vi)(A) exempts records "of an agency relating to a non-criminal investigation including … a record that, if disclosed, would … [r]eveal the institution, progress or result of an agency investigation...."

3

Requestor appealed to the OAG's designated Appeals Officer.

The Appeals Officer initially determined that because the request for "personal" or "inappropriate" emails was not sufficiently specific under Section 703 of the RTKL for the OAG to respond to the request, the OAG did not have to comply with that portion of the request. However, she found that the request for "pornographic" emails was sufficiently specific to allow the OAG to determine which emails fall into that category. The Appeals Officer found that while the requested time period and universe of names to be searched is "expansive," there is no basis in the record to conclude that the request would be an unreasonable burden on the OAG because the OAG will know the records sought with sufficient specificity when limited to pornographic emails.

The Appeals Officer also determined that the request could not be denied on the basis that the emails are not a "record" or "public record." She noted that "[n]ot all emails are records" and that this Court "has held that not all emails are accessible under the RTK[L] simply because they evidence 'communications of a public official.' Such a broad construction would ignore those decisions emphasizing content and interpreting 'records' in the context of emails." (RR at 31) (citations omitted). Finding that while the requested emails do not prove, support or evidence a transaction in which the OAG is engaged, the use of emails to transmit pornographic material is an "activity" documenting an employee's improper use of an agency's time and resources making it a "record" within the meaning of the RTKL. (*Id.* at 32-33).

The Appeals Officer further determined that the non-criminal investigation exemption of Section 708(b)(17)(vi)(A) required the OAG "to demonstrate that 'a systematic or searching inquiry, a detailed examination, or an official probe' is being conducted regarding a noncriminal matter." (RR at 34) (citation omitted). She explained that the OAG did not offer any affidavits to support the conclusory statements of the right-to-know Officer that the emails may be relevant to an investigation of OAG policies and the appropriate use of OAG equipment which would reveal the progress or result of the OAG investigation. She noted, "In fact, there is no evidence of an actual investigation except for the statement of the RTK Officer." (*Id.* at 35). The Appeals Officer stated that it was the OAG's burden to rebut the presumption of "public record" in Section 305(a) by a preponderance of the evidence and that "a bold statement made by the RTK Officer in her letter is not sufficient" because "it does not constitute evidence—much less a preponderance—to establish either that an ongoing investigation is in process or that the requested emails bear any relationship to such an investigation." (*Id.*).

As a result, the Appeals Officer directed the OAG to produce copies of all email traffic involving pornographic material to and from the work accounts of current and former OAG office staffers and other current and former state officials from 2005 to the present, including all participants in the email chains and including the actual emails from their point of origin on. The OAG then filed the instant petition for review.

The core issue on appeal[7] is whether personal emails are public records within the meaning of the RTKL so that the agency is compelled to produce them under a RTKL request because they document the conduct of that agency.

In making a determination that the information sought is a "public record," a requestor must establish that the information sought falls within the definition of a "record" of the agency as defined in Section 102 the RTKL. *Office of Governor v. Bari*, 20 A.3d 634, 640 (Pa. Cmwlth. 2011). To establish that it is a public record, "the requestor must meet a two-part test: First, the information must 'document a transaction or activity of the agency.' Recently, this Court … interpreted 'documents' to mean 'proves, supports [or] evidences.' Second, the information must be 'created, received, or retained' in connection with the activity of the agency." *Barkeyville Borough v. Stearns*, 35 A.3d 91, 94-95 (Pa. Cmwlth. 2012) (citation omitted).

We addressed whether private emails using a public email address are public records in *Easton Area School District v. Baxter*, 35 A.3d 1259 (Pa. Cmwlth.), *appeal denied*, 54 A.3d 350 (Pa. 2012). In that case, the requestor sought all emails sent from and received by the email addresses of nine school board members, a school district superintendent, and the general school board for a one-month period. The school district denied the request on various grounds, but

---

[7] This Court exercises *de novo* review of appeals officers' decisions under the RTKL pertaining to Commonwealth agencies. *Meguerian v. Office of the Attorney General*, 86 A.3d 924, 927 n.4 (Pa. Cmwlth. 2013).

6

the Office of Open Records reversed and directed the school district to provide all responsive emails subject to the redaction of "personally identifiable information." On appeal, the trial court held that because the emails were sent and received from school district email addresses, were stored on the school district's server, and were the school district's property under its "Acceptable Use Policy," they were public records subject to disclosure under the RTKL subject to the appropriate redactions.

On appeal to this Court, the school district again argued, *inter alia*, that the emails to or from individual school board members' email addresses do not qualify as public records subject to disclosure under the RTKL. We examined case law from other jurisdictions[8] and concluded:

---

[8] We do not know of any state that has reached the conclusion that the contents of personal emails using a government email account are public records. To the contrary, all of the states that have addressed the issue have concluded that the contents of government employees' personal emails are not information about the affairs of government and are, therefore, not open to the public under their respective open records acts. In *Easton Area School District*, 35 A.3d at 1263, we cited the following decisions from other states:

> In *Denver Publishing Co. v. Board of County Commissioners of Arapahoe*, 121 P.3d 190 (Colo. 2005), the Colorado Supreme Court analyzed a trial court order that required disclosure of all email communications between a county recorder and assistant chief deputy. The Court explained that "[t]he simple possession, creation, or receipt of an e-mail record by a public official or employee is not dispositive as to whether the record is a 'public record.' The fact that a public employee or public official sent or received a message while compensated by public funds or using publicly-owned computer equipment is insufficient to make the message a 'public record.'" *Id.* at 199. It held that to be public record, the requested emails had to have "a demonstrable connection to the performance of public functions." *Id.* at 203.

**(Footnote continued on next page…)**

We agree with those cases that emails should not be considered "records" just because they are sent or received using an agency email address or by virtue of their location on an agency-owned computer, even where, as here, the agency has a policy limiting use of computers to official business and stating that users have no expectation of privacy. That is so because a record is

---

**(continued…)**

In *Florida v. City of Clearwater*, 863 So. 2d 149 (Fla. 2003), the Florida Supreme Court held that "private documents cannot be deemed public records solely by virtue of their placement on an agency-owned computer. The determining factor is the nature of the record, not its physical location." *Id.* at 154. In that case, the city had a "Computer Resources Use Policy" similar to the School District's "Acceptable Use Policy." The Court held that such a policy "cannot be construed as expanding the constitutional or statutory definition of public records to include 'personal' documents." *Id.*

The Court of Appeals of Michigan similarly held in *Howell Education Association, MEA/NEA v. Howell Board of Education*, 287 Mich. App. 228, 789 N.W.2d 495[, *appeal denied*, 488 Mich. 1010, 791 N.W.2d 719] (2010), that a public school's possession and retention of electronic data in its email system did not render teachers' private emails public records subject to disclosure. The court emphasized that this principle applies even where a teacher agrees to and subsequently violates a school district's acceptable use policy for its email system. *Id.* at 503.

Finally, in *Schill v. Wisconsin Rapids School District*, 327 Wis. 2d 572, 786 N.W.2d 177 (2010), the Wisconsin Supreme Court examined a request for all emails of public school teachers sent and received via school district email accounts on school district-owned computers. Ruling that such emails were not records under Wisconsin's Public Records Law, the Court stated that "while government business is to be kept open, the contents of employee's personal emails are not a part of government business" simply because they are sent and received on government email and computer systems. *Id.* at 183. [(Footnotes omitted)].

8

"information … that documents a transaction or activity of an agency," and personal emails that do not do so are simply not records.

*Easton Area School District*, 35 A.3d at 1264. *See also Meguerian*, 86 A.3d at 930 ("For emails to qualify as records 'of' an agency, we look to the subject-matter of the records. Emails are not considered records of an agency simply because they are sent or received using an agency email address or by virtue of their location on an agency computer. The emails must document a transaction or activity of the responding agency.") (citations omitted).

The requirement that an email must document a "transaction or activity of the agency" is essential for a record to be a public record. This is illustrated by our decision in *Mollick v. Township of Worcester*, 32 A.3d 859 (Pa. Cmwlth. 2011). In that case, we held that notwithstanding the fact that the emails were sent on personal computers using personal email addresses and on personal time, nonetheless, the emails sent between township supervisors were "records" under the RTKL because those records documented a transaction or activity of the township. What makes an email a "public record," then, is whether the information sought documents an agency transaction or activity, and the fact whether the information is sent to, stored on or received by a public or personal computer is irrelevant in determining whether the email is a "public record."

Acknowledging those cases, Requestor contends that while the requested emails do not document an agency transaction or activity *per se*, they become a public record because they document a violation of agency policy and

9

that transforms them into an "activity of the agency" and makes them a public record under the RTKL.[9]  If that reasoning were to be adopted, that would mean that if an employee sends what are purportedly pornographic emails, uses the government email for business, or just overuses the email system, those emails would also be subject to disclosure.  Moreover, that reasoning is broad enough to encompass a request for all personal emails on the basis that the requestor wants to know if the agency is enforcing its policy to make sure that violations do not occur.  If we were to adopt that view, then no personal emails would ever be exempt from disclosure because that principle is sufficiently broad to encompass all personal emails, and they would all have to be disclosed to determine whether an agency is properly enforcing its fair use email policy.

In this case, the records sought are emails that were either sent to or from an OAG email address or retained by the recipient in violation of OAG policy.  The fact that they were sent, received or retained in violation of OAG policy does not transform what was not a public record into a public record under the RTKL.  For emails to qualify as records "of" an agency, we only look to see if the subject-matter of the records relate to the agency's operations.  None of the

---

[9] It making that argument, it relies on our decision in *Johnson v. Pennsylvania Convention Center Authority* [(PCCA)], 49 A.3d 920 (Pa. Cmwlth. 2012).  In that case, the requestor sought access to records which relate to a "labor management agreement" executed by the PCCA and all trade unions which provided labor at the Convention Center.  Reversing the finding that those public records were exempt from disclosure, we stated, "The public has the right to know who is performing services for the government agency, the scope of services, the disputes concerning the scope of services, the costs relating to those services, and the resolution of disputes concerning those services." *Id.* at 926. *Johnson* is inapplicable because there was no dispute that the requested records documented a "transaction" or "activity" of the agency as in this case, but only whether the records were exempt.

10

requested emails remotely relate to OAG operations or any "transaction" or "activity" of that agency. The emails only related to personal activity of individuals.[10] While the public has the right to access "records" relating to OAG employees and its "transactions" or "activities," the RTKL does not compel disclosure of all OAG emails solely on the basis that they violate OAG policy. As a result, the requested emails are not disclosable as records under the RTKL merely because they were sent or received using an OAG email address or by

---

[10] The dissent contends that if an activity, in this case sending or receiving emails, is so pervasive and widespread within an agency, an otherwise non-governmental activity may become an activity of that agency. Under this approach, there would have to be fact-finding to determine when it crossed the line to determine whether the number of emails went from merely frequent to "pervasive and widespread." No one person would know where that line is crossed because the "pervasive and widespread" standard is nebulous in itself, and no one person could know how many other people are receiving the emails of a similar type. For example, if one person receives 5 or 10 or 20 emails regarding bar association functions, does it then become "pervasive and widespread" when 10 or 20 or 50 people in an agency receive the emails. Simply put, the standard is simply unworkable.

Moreover, a non-governmental activity is not transformed into a governmental activity just because it is "pervasive and widespread." A governmental activity is what an agency and its employees do to carry out statutory duties and advance the agency's mission. If governmental employees gamble at work, tell off-color jokes around the water cooler, or email each other concerning fantasy football or the NCAA tournament at work in a "pervasive and widespread" manner, that does not transform these activities into a governmental activity. (Under the dissent's view, if an employee sustained carpel tunnel syndrome from typing all of the "pornographic" emails, the employee could seek workers' compensation benefits because he or she was engaged in a governmental activity.) To the contrary, each of those employees is subject to discipline because they are not using their worktime to engage in governmental activities, but are spending time carrying out their personal business. Simply put, just because "fool's gold" is "pervasive and widespread" does not transform it into gold.

In any event, if the dissent's view is adopted and the private emails at issue are transformed into public records, Section 708 (b)(17)(6) of the RTKL, 65 P.S. §67.708 (b)(17)(6), provides that public records need not be released if they "constitute an unwarranted invasion of privacy."

11

virtue of their location on an OAG computer in violation of OAG policy. *Easton Area School District*.[11]

One final comment that is necessary given all of the statements that the Attorney General has made regarding the release of this information. We want to make clear that we are only stating that the RTKL does not compel her to release the requested emails and, while there may be other legal reasons that prevent her from doing so, nothing in this opinion precludes her from releasing the emails.

Accordingly, the Appeals Officer's determination requiring OAG to provide copies of all email traffic involving pornographic material to and from OAG email addresses of former and current office staffers and state officials from 2005 to the present, including all participants in the email chains that shared in the emails, including the actual emails from their point of origin on, is reversed.

_____
DAN PELLEGRINI, President Judge

---

[11] Because we conclude that the requested emails do not constitute "records" under the RTKL, we need not determine the application of the exemption of Section 708(b)(17)(vi)(A) to the requested documents.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Office of Attorney    :
General,    :
                Petitioner    :
    :
           v.    : No. 2096 C.D. 2014
    :
The Philadelphia Inquirer,    :
                Respondent    :

# **O R D E R**

AND NOW, this <u>19th</u> day of <u>November</u>, 2015, that portion of the Final Determination of the Office of Attorney General Appeals Officer dated October 23, 2014, at SR-59467-MF2T, denying the disclosure of the requested emails of the Pennsylvania Office of Attorney General (OAG) is affirmed; that portion of the Final Determination requiring the disclosure of the requested OAG emails is reversed.

_____
DAN PELLEGRINI, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Office of Attorney : 
General, : 
                   Petitioner : 
                            : 
              v. :   No. 2096 C.D. 2014
                            :   Argued: September 16, 2015
The Philadelphia Inquirer, : 
                   Respondent : 


BEFORE:     HONORABLE DAN PELLEGRINI, President Judge
                  HONORABLE BERNARD L. McGINLEY, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE MARY HANNAH LEAVITT, Judge
                  HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE ANNE E. COVEY, Judge


**DISSENTING OPINION BY**
**JUDGE LEADBETTER**               **FILED: November 19, 2015**


       I agree in large part with the well-considered majority opinion, and believe it accurately states the general rule which will control the vast majority of cases. I do believe, however, that content is not the only factor to be considered. Rather, I would say that if communications regarding a particular subject matter are shown to be pervasive and widespread within an agency, they may reach the level of being an activity of that agency. Showing that such communications have reached that level will, no doubt, be a difficult burden to meet and, where the content is purely personal in nature, an exceedingly rare circumstance.

Nonetheless, where a requester can meet that burden, I believe the information should be subject to disclosure.  Accordingly, I would remand to the Appeals Officer to allow the Inquirer to attempt to meet this burden.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge