DISSENTING OPINION BY
Judge. McCullough.
I respectfully dissent. The Majority hinges its analysis on Pennsylvania Office *1211 of Attorney General v. Philadelphia Inquirer, 127 A.3d 57 (en banc), which I find to be distinguishable on its facts. In that case, the requester specifically sought emails that are “of a personal nature and involve pornographic or otherwise inappropriate material”' sent to or from employees of the Office of Attorney General (OAG). Philadelphia Inquirer, 127 A.3d at 59 (emphasis added). This, Court framed the issue on appeal as “whether personal emails are public records within the meaning of the [Right-to-Know Law] RTKL[1]....’ Philadelphia Inquirer, 127 A.3d at 60 (emphasis added). Stressing the dichotomy between information which is “personal” (and not a public record) and information that documents “a transaction or activity” of an agency (which is a public record),[2] we concluded that the requested “emails only related to personal activity of individuals.” Id. at 63 (emphasis added). As I read Philadelphia Inquirer, our conclusion was necessarily compelled by the facial language of the requester’s request, which explicitly sought “personal” emails containing pornographic images.
In this case, however, Requester did not request “personal” emails. Instead, he sought emails “reviewed by Special Deputy Geoffrey Moulton that contain pornographic images” sent by OAG employees. (Maj. op. at 1205-06.) In other words, the request is for emails sent by OAG employees and specifically reviewed by an employee of the OAG in the course and scope of his employment. In my view, the dis-positive factor in Philadelphia Inquirer is simply missing here. Therefore, I believe that our decision in Philadelphia Inquirer is factually inapposite.
Because the-request does not seek, on its face, personal emails, the question becomes whether several thousand allegedly “pornographic images” sent via' email between OAG employees and reviewed by a senior deputy on behalf of the OAG evidence, and are received in connection with, an “activity” of an agency. Philadelphia Inquirer, 127 A.3d at 62. Correspondence among staff via email is “a natural or normal function or operation,” WebsteR’s Thikd New International Dictionary 22 (2002) .(defining “activity”), of the OAG and is an integral part of its employees’ routine daily affairs. Stated otherwise, when employees utilize a governmental email account to exchange thousands of emails of a particular .nature, their conduct becomes an “activity” of that agency.' This is especially true considering that there is nothing inherently “persona)” .about pornographic images that are located .on the internet and accessible to the public in general and/or do not directly relate to the private affairs of the employee. See :Webster’s Third New International Dictionary 1686 (2002) (defining, “personal,” in pertinent part, as “of or relating to a. particular person;” “peculiar or proper to private concerns;” and “not' public or general.”)., ' . . ’
The. RTKL was implemented, to allow the public to scrutinize and challenge actions of government officials. SWB Yankees LLC v. Wintermantel, 615 Pa. 640, 45 A.3d 1029, 1042 (2012). Moreover, public funds are used to purchase computer infrastructure, and governmental email accounts are intended to be used for the purpose of conducting government busi *1212 ness. Because public funds were used to pay for the computers and the employees’ salaries, the employees here are indisputably conducting an “activity” on behalf of the OAG, as further evidenced by the fact that a senior deputy undertook a review of same on behalf of the agency. This is particularly true given that thousands of emails of a particular nature were exchanged, and, moreover, were allegedly exchanged in violation of OAG policy.
As noted by Judge Bonnie Leadbetter in her dissenting opinion to Philadelphia Inquirer, “if communications regarding a particular subject matter are shown to be pervasive and widespread within an agency, they may reach the level of being an activity of that agency.” Philadelphia Inquirer, 127 A.3d at 64 (Leadbetter, J., dissenting).
Here, the record reflects that during work hours, and using computers that were purchased with public tax dollars, employees transmitted several thousand emails purportedly containing pornographic activity, an activity which is also an improper use of the OAG’s time and resources and which prompted a review by the OAG itself. I believe Requester has demonstrated a “pervasive and widespread” communication within an agency that constitutes an activity of the agency.
For these reasons, I would conclude that Philadelphia Inquirer does not control our disposition. Because Requester requested documents that constitute public records under the RTKL, and the OAG has failed to prove the applicability of an exemption,[3] I would affirm the OAG’s Appeals Officers Final Determination. Therefore, I respectfully dissent.

. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

. Section 102 of the RTKL defines "public record” as “[a] record ... of a Commonwealth ... agency,” and defines "record” as "[i]nformation ... that documents a transaction or activity of any agency that is created, received, or retained pursuant to law or in connection with a transaction, business or activity of the agency.” 65 P.S. § 67.102.

. Unlike the Majority, I would not conclude that the request, on its face, establishes that the requested records are covered under the noncriminal investigative exception located at section 708(b)(17)(ii) of the RTKL, 65 P.S. § 67.708(b)(17)(ii). Significantly, the OAG has failed to point to any statutory or regulatory mandate to conduct internal investigations, and, absent such explicit authority, the applicability of the noncriminal investigative exception must be demonstrated with affirmative evidence. Cf. Coulter v. Department of Public Welfare, 65 A.3d 1085, 1088-89 (Pa.Cmwlth.2013) (concluding that the facial language of a request may prove the applicability of the noncriminal investigative exception where statutes and/or regulations prove that the agency conducted a noncriminal investigation in accordance with those statutes and/or regulations). I agree with the OAG’s Appeals Officer's determination that the OAG’s evidence in this case was insufficient to establish that the requested records were exempt under the noncriminal investigative exemption. (Final Determination at 9-10.)