# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wyoming Borough                    :
                                   :
        v.                         :    No. 715 C.D. 2021
                                   :    Argued: December 14, 2022
Robert Boyer,                      :
                    Appellant      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge


OPINION BY
JUDGE WALLACE                                  FILED:  July 27, 2023


Robert Boyer (Boyer)[1] appeals the order dated March 25, 2021, by the Court of Common Pleas of Luzerne County (Common Pleas), which reversed the final determination of the Pennsylvania Office of Open Records (Office) and concluded the social media activities of Joseph Dominick (Dominick), the Mayor of Wyoming Borough (Borough), were not "public records" subject to disclosure under the Right-to-Know Law (Law).[2]  After careful review, we vacate and remand.

---

[1] Boyer is an attorney and, along with co-counsel, represents himself in this appeal.

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

## I. Background

On or about May 4, 2018, Boyer submitted a request form to the Borough, seeking documents related to the "Joseph Dominick Mayor of Wyoming" Facebook page (Page). Reproduced Record (R.R.) at 8-9.[3] In relevant part, Boyer requested the following:

> List and contact information of all [P]age administrators, editors, or other roles.
>
> All comments made and removed or blocked from the [P]age. Policy and procedure for blocking or removing comments.
>
> . . . .
>
> All electronic messages that have been sent to the . . . [P]age and responses from the [P]age administrators, editors, etc. Also include any additional emails related to the . . . [P]age content, comments or profiles received outside of the Facebook message function.
>
> . . . .
>
> Printout of all posts made to the [P]age and "liked" by the administrator, editors, or other [P]age roles.

*Id.* at 8.

The Borough issued a letter dated May 9, 2018, invoking a 30-day extension to respond to Boyer's request. *Id.* at 10-11. The Borough did not respond within 30 days, and Boyer's request was deemed denied. *See* Section 902(b)(2) of the Law, 65 P.S. § 67.902(b)(2). The Borough issued a letter dated June 21, 2018, discussing its denial of Boyer's request. It explained the Page was "privately maintained," and,

---

[3] Boyer should have included a lowercase "a" after the page numbers in the reproduced record. *See* Pa.R.A.P. 2173 (requiring pages to be "numbered separately in Arabic figures . . . followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc."). Since he did not, however, we will not add an "a" to our citations.

"in speaking with [Dominick] . . . most of the items requested do not even exist." *Id.* at 5. The Borough added the Page's posts were public, according to Dominick, "so they may be accessed electronically by anyone." *Id.*

Boyer appealed to the Office. He emphasized the Page was a "public figure" Facebook page identifying Dominick as "Mayor of Wyoming," which often posted "council meeting information, memos related to municipal business, and municipal announcements." *Id.* at 7, 25, 28. Boyer maintained he did not have access to the Page because he did not have a Facebook account. *Id.* at 7. The Borough submitted a response and attestation by Dominick. *Id.* at 21-23. Dominick attested he was not authorized to post on the Borough website or Facebook page, and neither place had links to his Page or "sanction[ed] its use." *Id.* at 23. Dominick further attested he conducted a "good faith search" for documents listed in Boyer's request, and many of the documents did not exist. *Id.*

The Office issued a final determination on September 5, 2018, concluding the Page was a "record" of the Borough. Original Record (O.R.), Item No. 12, Office Record, Ex. 6 at 4-5. The Office explained its focus was not whether the Page was privately maintained but "whether the content . . . shows that it is used as a significant platform by an elected official to conduct official business." *Id.* at 5. It reasoned:

> The Facebook page at issue is titled "Joseph Dominick Mayor of Wyoming," and is categorized as a "Public Figure" page. Nearly all of the postings on the face of the [P]age consist of . . . Dominick's opinion on news stories involving the Borough and political entities affiliated with the Borough, announcements of Borough council meeting times and places, and discussion on topics of public interest within the Borough. Although . . . Dominick attests that his [P]age is not authorized by the Borough's council or administration, he possesses his own set of responsibilities and powers in overseeing the Borough as its mayor, and it is apparent that he uses this . . . [P]age in his role as mayor as a tool to foster community action and engagement. . . .

3

*Id.*[4]

The Office found meritless the Borough's explanation that Boyer could access the Page on his own. *Id.* at 6. The Office reasoned the Law requires an agency to provide paper copies of a record available electronically upon written request. *Id.* (citing Section 704(b)(2) of the Law, 65 P.S. § 67.704(b)(2)). In addition, Boyer originally requested 10 categories of documents. *Id.* at 1-2. The Office credited Dominick's attestation that documents did not exist in six of the categories.[5] *Id.* at 7. It rejected Dominick's attestation that documents did not exist in the first two categories Boyer had requested, which included contact information for the Page's administrators and all comments made on and removed or blocked from the Page. *Id.* at 7-8. The Office reasoned the attestation was not sufficiently detailed as to these categories because it did not "affirmatively show that [Dominick] accessed the [Page] to look for these records" or otherwise explain "the search conducted." *Id.* (footnote omitted). Thus, the Office granted Boyer's appeal in part and denied it in part, directing the Borough to provide Boyer with the four categories of documents listed above.

The Borough filed a petition for review with Common Pleas, arguing the Page was not a "record" under the Law. R.R. at 36-38. Common Pleas held argument via telephone on November 25, 2020. During argument, counsel for the Borough noted Boyer was the previous Mayor of Wyoming but lost reelection to Dominick. R.R. at 77. Counsel described Boyer's records request as a "fishing expedition" against

---

[4] The record contains only limited evidence regarding the Page's contents. This includes a printout of the Page with no posts displayed and a printout of a single post, in which Dominick encourages his constituents to "attend the Council meeting this upcoming Monday . . . to express your concerns with how the Council majority has been mismanaging your tax dollars." *See* R.R. at 12-13. The parties do not dispute the accuracy of the Office's description of the Page.

[5] Boyer does not challenge the Office's conclusion on appeal.

4

his political opponent, which did not relate to actions taken by the Borough. *Id.* at 77-81. Boyer explained he requested the documents at issue because he "was being told by people, [']you should see the stuff that's on this [P]age about you,[']" but he did not have a Facebook account and was unable to view the Page. *Id.* at 82. Boyer disputed the Borough's position that the documents he requested were not "records," contending the Page only existed because Dominick was the Mayor and "was clearly created as a result of his connection and nexus to borough activities." *Id.* at 83-90.

Common Pleas issued an order dated March 25, 2021, reversing the Office's decision on the basis that the "items requested . . . are not 'public records.'" O.R., Item No. 23, Order, 3/25/21, at 1. Common Pleas did not extensively elaborate on its rationale but cited the Law and several of this Court's opinions. *See id.* Boyer timely appealed. Common Pleas issued a second order dated February 22, 2022. It explained the judge previously handling the case retired, and it rested on the order dated March 25, 2021, "as the Opinion of the Court, insomuch as the Order clearly states the reasons and rationale for the Court's ruling." R.R. at 104.

## II. Discussion

When Common Pleas reviews the Office's decision regarding public records of a local agency, it serves as the ultimate fact-finder and conducts de novo review, meaning it owes the Office no deference. *Am. Civ. Liberties Union of Pa. v. Pa. State Police*, 232 A.3d 654, 662-63 (Pa. 2020). This Court, in turn, must review Common Pleas' ruling for an abuse of discretion. *Id.* at 665. We find an abuse of discretion only if Common Pleas "overrides or misapplies the law; exercises manifestly unreasonable judgment; or manifests partiality, bias, or ill will." *Id.* (citing *Van Dine v. Gyuriska*, 713 A.2d 1104, 1105 (Pa. 1998)).

5

The Law provides a means to request the "public records" of Commonwealth and local agencies. *See* Section 102 of the Law, 65 P.S. § 67.102. A "public record" is a "record" of a Commonwealth or local agency that does not fall under one of the Law's exemptions; is not exempt under Federal or State law or regulation, or under a judicial order or decree; and is not protected by a privilege. *Id.* The Law defines "record" as follows:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

*Id.* We must liberally construe these terms to effectuate the Law's "salutary purpose of promoting 'access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions.'" *Dep't of Pub. Welfare v. Eiseman*, 125 A.3d 19, 29 (Pa. 2015) (quoting *Levy v. Senate of Pa.*, 65 A.3d 361, 381 (Pa. 2013)).

Here, Boyer argues the Page is a "record" under the Law because it documents the transactions or activities of the Borough and was created, received, or retained in connection with those transactions or activities. *See* Boyers' Br. at 13, 21. Boyer emphasizes the Page is a "public figure" Facebook page where Dominick discussed matters relevant to the Borough and provided Borough Council meeting times and places. *Id.* at 13, 17, 20-21. As the Page was "used as a vital conduit of information between the Borough and its residents," Boyer concludes, documents "related to the social media activities" on the Page must qualify as Borough records. *Id.* at 26.

6

This Court recently addressed a similar dispute in *Penncrest School District v. Cagle*, 293 A.3d 783 (Pa. Cmwlth. 2023), *pet. for allowance of appeal filed* (Pa., No. 103 WAL 2023).[6]  In that case, a third party created a public Facebook post, criticizing a book display at a high school library in Penncrest School District.  *Id.* at 786.  A member of the Penncrest School Board "shared" the post on his personal Facebook page with additional, critical commentary.  *Id.*  Later, the President of the Board also shared the post on his personal Facebook page without additional commentary.  *Id.*  After a document request, the Office determined related posts and comments on the personal Facebook pages of the School Board member and President of the Board were "records" of Penncrest School District under the Law.  *Id.* at 786-87.  The Court of Common Pleas of Crawford County affirmed the Office's determination, and Penncrest School District appealed to this Court.  *Id.* at 787-88.

On appeal, the Court performed an extensive review of relevant case law from the Commonwealth and elsewhere.  *Id.* at 789-800.  The Court ultimately crafted an analytical framework to be applied when determining the status of a school board member's social media posts, consisting of a nonexclusive list of factors, with the weight given to each factor left to the fact-finder's discretion.  *Id.* at 800-02.  Summarized and reformatted for ease of discussion, the analytical framework is as follows:

> 1. An examination of "the social media account itself, including the private or public status of the account, as well as whether the account has the 'trappings' of an official agency account."  This includes consideration of whether the person operating the account has an actual or apparent duty to do so, and whether the authority of the public office at issue is necessary to operate the account.  The examination may not

---

[6] The author of this opinion was one of three dissenting judges in *Penncrest*.

focus solely on the "trappings" of the account but must also consider "the universe of responsive posts."

2. An examination of the posts at issue. This includes consideration of "whether such posts prove, support, or evidence a transaction or activity of an agency" and "whether the posts were created, received, or retained by law or in connection with a transaction, business, or activity of an agency." A post does not necessarily "prove, support, or evidence a transaction or activity of an agency" if it is merely informational in nature.

3. An examination of "official capacity." That is, the posts at issue "must be created, received, or retained by public officials in their official capacity, i.e., scope of employment, as public officials." This includes consideration of "whether the information at issue was produced under the agency's authority or subsequently ratified, adopted, or confirmed by the agency, i.e., authorized activity." This may involve a review of whether the agency required or directed the posts, or whether the posts "furthered the agency's interests."

*See id.* Applying this framework in *Penncrest*, the Court vacated and remanded for the Court of Common Pleas of Crawford County to develop the record as necessary and particularly to assess whether the Penncrest School Board member and President of the Board acted in an "official capacity" when they made the disputed Facebook posts. *Id.* at 802.

*Penncrest's* discussion of "official capacity" is particularly instructive in this matter. Importantly, *Penncrest* discussed this Court's decisions involving requests for e-mails of public officials, explaining a public official must have been "acting in an official capacity" for his or her e-mails to be disclosed. *Id.* at 793 (citing *Barkeyville Borough v. Stearns*, 35 A.3d 91, 97 (Pa. Cmwlth. 2012); *Easton Area Sch. Dist. v. Baxter*, 35 A.3d 1259, 1264 (Pa. Cmwlth. 2012)). To act "in an official capacity," our decisions have suggested a public official "must have the authority to bind the agency." *Id.* (citing *In re Silberstein*, 11 A.3d 629, 633 (Pa. Cmwlth. 2011); *Mollick v. Twp. of Worcester*, 32 A.3d 859, 872 (Pa. Cmwlth. 2011)). The Court in

8

*Penncrest* determined strictly applying the principles from our decisions regarding e-mails to social media posts "may be unwise" because of differences between the two forms of communication, but it acknowledged these decisions provide valuable guidance. *Id.*

Taking the principles from our e-mail decisions into consideration here, there are strong indications Dominick used the Page in an "official capacity." The Office found Dominick used the Page "in his role as mayor as a tool to foster community action and engagement." O.R., Item No. 12, Office Record, Ex. 6 at 5. The limited evidence available in the record regarding the Page's contents, which includes a post where Dominick encourages constituents to attend a Borough Council meeting and express concerns regarding its use of tax dollars, supports this assessment. *See* R.R. at 12-13. Counsel for the Borough appeared to concede Dominick's "official" use of the Page during argument before this Court, explaining Dominick used the Page because he was "not in the majority," did not have access to the Borough's website, and could not "have communications through the Borough."

Dominick also has the individual authority to bind the Borough. The Borough Code vests the mayor with emergency powers, 8 Pa.C.S. § 10A06(b), and the duty to, among other things "preserve order," enforce ordinances and regulations, remove nuisances, and "exact a faithful performance of the duties of the officers appointed," 8 Pa.C.S. § 10A07(1). The mayor may cast a tie-breaking vote at a borough council meeting, 8 Pa.C.S. § 1003(d), and may veto ordinances the borough council enacts, subject to an override vote, 8 Pa.C.S. § 3301.3(a)(2).

Accordingly, although the Court in *Penncrest* stated its holding applied to "a school board member's social media post," 293 A.3d at 800, we cannot substantively distinguish the social media posts of a school board member from those of a borough

9

mayor. The facts of this matter demonstrate, if anything, that case law more strongly supports the disclosure of a borough mayor's social media activities. Dominick used the Page in a distinctly "official" way and, as Mayor, has greater "authority to bind the agency" than the School Board member and President of the Board in *Penncrest*. *See id.* at 791-93. We conclude *Penncrest's* analytical framework must apply with equal force under these circumstances.

Common Pleas decided this matter by order dated March 25, 2021, about two years before the *Penncrest* decision on April 24, 2023, and did not have a chance to apply *Penncrest's* analytical framework. Common Pleas concluded the documents Boyer requested were not "public records." O.R., Item No. 23, Order, 3/25/21, at 1. It cited Section 102 of the Law and three of this Court's opinions involving e-mails: *Silberstein*, *Barkeyville Borough*, and *Pennsylvania Office of Attorney General v. Philadelphia Inquirer*, 127 A.3d 57 (Pa. Cmwlth. 2015) (en banc). Common Pleas did not expand on this rationale in its order dated February 22, 2022, but rested on the prior order of March 25, 2021, noting the judge who decided the case had retired. R.R. at 104. Given the Court's reasoning in *Penncrest* and our discussion above, the cases Common Pleas cited do not control our disposition of this appeal or eliminate the need to apply *Penncrest's* analytical framework.

Nor can we resolve this appeal by applying *Penncrest's* analytical framework ourselves. *Penncrest* crafted a nonexclusive list of factors for a fact-finder to apply and weigh when evaluating the status of a social media post. Common Pleas is the ultimate fact-finder here. *See Am. Civ. Liberties Union of Pa.*, 232 A.3d at 662-63. Common Pleas' brief explanation also prevents us from inferring how it would have

10

applied the framework if it had the opportunity to do so. We may not usurp Common Pleas' role and supply the necessary findings.[7]

### III. Conclusion

Thus, the Court must vacate Common Pleas' order dated March 25, 2021, and remand for it to apply *Penncrest's* analytical framework to the circumstances of this case. Common Pleas may expand the record if necessary. *See Penncrest*, 293 A.3d at 802 (citing *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 476 (Pa. 2013)).

_____
STACY WALLACE, Judge

Judge McCullough concurs in the result only.

---

[7] Boyer contends the Borough constructively possessed the documents he requested, even though Dominick created the documents using social media. Boyer's Br. at 24-25. If a social media post "did not originate from the agency or if the agency did not possess or create the post, if the post directly relates to the agency's governmental function, the post may be subject to . . . disclosure." *Penncrest*, 293 A.3d at 791 (citations omitted). Our remand will allow Common Pleas to determine whether the documents at issue here "directly relate[] to the agency's governmental function." *Id.*

Additionally, Boyer contends the Borough waived its argument that his document request was not sufficiently specific by failing to raise it with the Office. Boyer's Br. at 14, 22. He quotes our explanation in *Levy v. Senate of Pennsylvania*, 94 A.3d 436, 441-42 (Pa. Cmwlth. 2014), that "an agency must raise all its challenges before the fact-finder closes the record. . . . In the ordinary course of . . . proceedings, this will occur at the appeals officer stage, and a reviewing court will defer to the findings of the appeals officer." Our Supreme Court has made it clear Common Pleas is the ultimate fact-finder in these cases. *Am. Civ. Liberties Union of Pa.*, 232 A.3d at 662-63. Regardless, the Borough does not suggest it was unable to discern what documents Boyer was seeking, which is the concern underlying the specificity requirement. *See* Section 703 of the Law, 65 P.S. § 67.703 ("A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested . . . ."). The Borough's specificity argument merely reiterates that Boyer was not requesting "records" because he failed to "identify a specific action of the Borough," and it does not require a separate discussion. *See* Borough's Br. at 12 (explaining its specificity argument "is encompassed in the challenge as to whether or not the request of [Boyer] seeks a public record").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wyoming Borough                    :
                                   :
                                   :
        v.                         :    No. 715 C.D. 2021
                                   :
Robert Boyer,                      :
                   Appellant       :

# **O R D E R**

**AND NOW**, this 27th day of July 2023, the order dated March 25, 2021, by the Court of Common Pleas of Luzerne County (Common Pleas) is hereby **VACATED**, and the case is **REMANDED** to Common Pleas to determine whether the documents requested by the appellant, Robert Boyer, are "records," and therefore subject to disclosure as "public records" under the Right-to-Know Law,[1] using the Commonwealth Court's analytical framework in *Penncrest School District v. Cagle*, 293 A.3d 783 (Pa. Cmwlth. 2023), *pet. for allowance of appeal filed* (Pa., No. 103 WAL 2023).

Jurisdiction relinquished.

_____
STACY WALLACE, Judge

_____

[1]Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.