# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Office of      :
Attorney General,      :
         Petitioner      :
     :
         v.      : No. 2097 C.D. 2014
     : Submitted: December 31, 2015
Brad Bumsted, Capitol Reporter      :
Pittsburgh Tribune-Review,      :
         Respondent      :


BEFORE:     HONORABLE DAN PELLEGRINI, President Judge[1]
                     HONORABLE PATRICIA A. McCULLOUGH, Judge
                     HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
PRESIDENT JUDGE PELLEGRINI         FILED: March 15, 2016


The Pennsylvania Office of Attorney General (OAG) petitions for review of a final determination of its designated Right-to-Know Law (RTKL)[2] Appeals Officer (Appeals Officer)[3] granting Brad Bumsted's (Requestor)[4] request

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[3] Section 503(d)(1) of the RTKL provides, in pertinent part, that the Attorney General, rather than the Office of Open Records, shall designate an appeals officer to hear appeals from the OAG's denial of a record's request under the RTKL. 65 P.S. §67.503(d)(1).

[4] Requestor chose not to file a brief, but instead requested that the matter be consolidated with a related case, *Pennsylvania Office of Attorney General v. Philadelphia Inquirer*, ___ A.3d ___ (Pa. Cmwlth., No. 2096 C.D. 2014, filed November 19, 2015) (*en banc*), and to join the brief of a party to that case. This Court denied Requestor's application to consolidate the cases **(Footnote continued on next page…)**

under the RTKL for emails containing pornographic materials. For the reasons that follow, we reverse.

## I.

In July 2014, Requestor, the State Capitol Reporter for the Pittsburgh Tribune-Review, submitted an email request under the RTKL to the OAG seeking copies of "any emails or other documents on an internal [OAG] review of pornographic emails sent among current and former [OAG] staff from and to each other understanding that names and email addresses may be redacted." (Reproduced Record (R.R.) at 01.) Requestor emailed a second request minutes later clarifying the first request and seeking "Emails and/or Email attachments reviewed by Special Deputy Geoffrey Moulton that contain pornographic images – sent by former and current [OAG] staff to other current and former [OAG] staffers – and former and current staffers who were cc'd." (R.R. at 02) (emphasis in original). The OAG responded, informing Requestor that his second, narrower request would be treated as his official RTKL request, but that that request was still fairly broad, with the term "pornographic" being ambiguous and subjective. Requestor was notified that after a legal review, a final response to the request would be provided within 30 calendar days of the request. Subsequently, the OAG requested an additional seven days to respond.

---

**(continued…)**

because, although the matters involve similar issues of law, they have separate, albeit, similar records. Thus, Requestor was precluded from joining the brief in the other case.

The OAG's designated Right-to-Know Officer (RTK Officer) denied Requestor's request, determining that:

- Requestor's first request was not sufficiently specific under Section 703 of the RTKL[5] and neither was the second because it failed to provide a more specific definition of "pornographic" and sought records over an infinite period of time between a large universe of individuals. However, "because the request was modified to emails reviewed by Geoffrey Moulton and relying on the Black's Law Dictionary (6th Ed.) definition of 'pornographic,' the OAG was able to discern if responsive documents exist";

- to the extent the requested "pornographic" emails exist, the information sought in the emails does not constitute a "record," much less a "public record" pursuant to Section 102 of the RTLK[6] as any "pornographic" emails and/or email attachments sent or received by current or former OAG personnel fall outside the scope of OAG business and the content of said emails does not "document a transaction or activity" of the OAG, nor were they "created, received or retained" by OAG personnel in connection with their position as public officials to further OAG business; and

- even assuming *arguendo* that the emails are "public records," that can be characterized as "pornographic," they are exempt from disclosure under the non-criminal investigation exemption in Section

---

[5] 65 P.S. §67.703. Section 703 states, in relevant part, that "[a] written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested…."

[6] 65 P.S. §67.102. Section 102 of the RTKL defines "record" as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency."

708(b)(17)(vi)(A) of the RTKL[7] because "they have now become part of an ongoing internal investigation" and the emails "may be relevant" to the investigation of violations of OAG policies on the appropriate use of its equipment that would reveal the progress or result of this investigation.

(R.R. at 07.)

## II.

Requestor appealed to the Appeals Officer in September 2014, modifying his request to the following:

- Evidence of misuse of emails, which were part of Special Deputy H. Geoffrey Moulton's review; records that were electronically sent or received, or copied (cc'd) by former employees of the [OAG] on state computers.

- Emails of former employees reviewed by Mr. Moulton including attachments that may violate the OAG's policy on Appropriate Use of Computer Resources including those containing pictures, words and images of nude and partially nude adults, and adults engaged in sexual acts.

- Internet Links transmitted and received by former employees of the [OAG] on state computers and/or state e-mail systems including pictures and images of nude and partially nude adults, and adults engaged in sexual acts and words describing sexual acts.

---

[7] 65 P.S. §67.708(b)(17)(vi)(A). Section 708(b)(17)(vi)(A) exempts records "of an agency relating to a non-criminal investigation including … a record that, if disclosed, would … [r]eveal the institution, progress or result of an agency investigation…."

4

(*Id.* at 09.)

The Appeals Officer held a telephone conference during which the parties did not request a hearing, and it was decided that the RTK Officer would rule upon the request contained in the September appeal within 30 days from the date of the September appeal request.

The RTK Officer denied Requestor's September appeal, finding that the request was not sufficiently specific under Section 703 of the RTKL. Moreover, as with the previous request, the RTK Officer explained that the information sought in the emails does not constitute a "record" or "public record," and that even if the information sought were public records, they fall within the non-criminal investigation exemption and, thus, would be exempt from disclosure. Requestor again appealed to the Appeals Officer.

## III.

The Appeals Officer issued a determination granting Requestor's appeal and requiring the OAG to produce the requested materials. In making her determination, the Appeals Officer found that the request is sufficiently specific as it narrows the universe to just emails "reviewed by Special Deputy Moulton," indicating that the time period would be the period of Special Deputy Moulton's review. The Appeals Officer also explained that only "records" that meet the definition set forth in Section 102 of the RTKL that are in an agency's possession are presumed public. She reasoned that although the requested emails "do not appear to prove, support, or evidence a *transaction* in which the OAG is engaged," they do:

5

> [E]vidence an agency activity—presumably an activity for which the employee is being paid but an activity which does not represent legitimate work. Rather, it is an activity which is a "misuse" of employee time and resources. If one of the purposes of the [RTKL] is to make public officials accountable for their actions … then the definition of "record" is broad enough to include emails which constitute "misuse of emails," presumably those emails which utilize Commonwealth computers for some use other than to transact legitimate Commonwealth business.

(*Id.* at 25-26) (emphasis in original). Accordingly, the Appeals Officer concluded that Requestor's request could not be denied on the grounds that it requested emails which are not "records" or "public records."

Finally, the Appeals Officer determined that the non-criminal investigation exemption provided in Section 708(b)(17)(vi)(A) required the OAG "to demonstrate that 'a systematic or searching inquiry, a detailed examination, or an official probe' is being conducted regarding a noncriminal matter." (R.R. at 27) (citation omitted). She reasoned that the OAG did not offer any affidavits to support its conclusory statements by the RTK Officer that the emails may be relevant to an investigation of violations of OAG policies, and that the appropriate use of agency equipment would reveal the progress or result of the investigation. She noted that she "has not seen any of the emails which the OAG concedes would fall within the requested documents and thus can make no determination about the relevance to an investigation." (*Id.*) The Appeals Officer explained that it was the OAG's burden to rebut the presumption of "public record" in Section 305(a) by a preponderance of the evidence, and that "a bold statement made by the RTK Officer in her letter is not evidence" as it "is not a sworn affidavit, and it does not

constitute evidence—much less a preponderance—to establish either that an ongoing investigation is in process or that the requested emails bear any relationship to that investigation." (*Id.* at 28.)

The Appeals Officer then granted Requestor's appeal and instructed the OAG to produce the requested materials. The OAG filed this petition for review.[8]

## IV.

## A.

The central issue on appeal is whether personal emails sent and received on a public email address fall within the "public records" definition of the RTKL, thereby subjecting the OAG to disclose the emails because they evidence the agency's activity.

In determining whether sought information is a "public record," a requestor must first establish that the information constitutes a "record" under Section 102 of the RTKL. *Barkeyville Borough v. Stearns*, 35 A.3d 91, 94-95 (Pa. Cmwlth. 2012). Then, in establishing whether the information is a "public record," the requestor must satisfy a two-part test: First, "the information must 'document a transaction or activity of the agency'"; and, second, "the information must be

---

[8] This Court exercises *de novo* review of appeals officers' decisions under the RTKL pertaining to Commonwealth agencies. *Meguerian v. Office of the Attorney General*, 86 A.3d 924, 927 n.4 (Pa. Cmwlth. 2013).

'created, received, or retained' in connection with the activity of the agency." *Id.* at 95 (citations omitted).

Recently, in *Pennsylvania Office of Attorney General v. Philadelphia Inquirer*, ___ A.3d ___ (Pa. Cmwlth., No. 2096 C.D. 2014, filed November 19, 2015), a case almost identical to the instant one, we addressed whether private emails using a public email address are "public records" and held that they are not. In that case, a requestor sought copies of emails that involved "pornographic or otherwise inappropriate material" to or from the accounts of specified former OAG employees for a certain period of time. The OAG's designated RTK Officer denied the request for reasons similar to those in this case, and the Appeals Officer reversed, likewise.

On appeal to this Court, we analyzed *Easton Area School District v. Baxter*, 35 A.3d 1259 (Pa. Cmwlth.), *appeal denied*, 54 A.3d 350 (Pa. 2012),[9] and found that an email is a "public record" only if "the information sought documents

___

[9] In *Easton*, a requestor sought all emails sent from and received by the email addresses of nine school board members, a school district superintendent, and the general school board for a one-month period. On appeal, this Court determined that:

> We agree with those cases that emails should not be considered "records" just because they are sent or received using an agency email address or by virtue of their location on an agency-owned computer, even where, as here, the agency has a policy of limiting use of computers to official business and stating that users have no expectation of privacy. That is so because a record is "information … that documents a transaction or activity of an agency," and personal emails that do not do so are simply not records.

*Easton*, 35 A.3d at 1264 (citations omitted).

an agency transaction or activity, and the fact whether the information is sent to, stored on or received by a public or personal computer is irrelevant in determining whether the email is a 'public record.'" We declined to adopt the requestor's theory that emails become a public record if they document a violation of agency policy, which transforms them into an "activity of the agency" and makes them a "public record" under the RTKL, concluding instead that:

> If that reasoning were to be adopted, that would mean that if an employee sends what are purportedly pornographic emails, uses the government email for business, or just overuses the email system, those emails would also be subject to disclosure. Moreover, that reasoning is broad enough to encompass a request for all personal emails on the basis that the requestor wants to know if the agency is enforcing its policy to make sure that violations do not occur. If we were to adopt that view, then no personal emails would ever be exempt from disclosure because that principle is sufficiently broad to encompass all personal emails, and they would all have to be disclosed to determine whether an agency is properly enforcing its fair use email policy.

*Philadelphia Inquirer*, ___ A.3d at ___, slip op. at 10. *See also Meguerian v. Office of the Attorney General*, 86 A.3d 924, 930 (Pa. Cmwlth. 2013) ("Emails are not considered records of an agency simply because they are sent or received using an agency email address or by virtue of their location on an agency computer").

Simply, emails not involving the agency business being sent, received or retained in violation of agency policy regarding use of a work email address for personal emails does not transform that information that was not a public record into a public record under the RTKL. *Philadelphia Inquirer*, ___ A.3d at ___, slip

9

op. at 10.  Rather, we must look to the subject matter of the requested emails in determining whether they qualify as records of an agency.  *Id.*; see also *Meguerian*, 86 A.3d at 930.

Here, the emails sought are those that were either "sent or received, or copied" by former OAG employees on their OAG email addresses in violation of OAG policy and were a part of Special Deputy Moulton's review.  However, these emails are not "public records" simply because they were sent, received and copied using OAG email addresses.  Instead, in deeming whether the emails qualify as the agency's records, we must examine the subject matter of the records to gauge whether the records relate to the OAG's operations.  Given that the request seeks emails of a "pornographic" nature, the requested emails cannot relate to any OAG "transaction" or "activity."  Although the emails may violate OAG policy, the OAG is not required under the RTKL to disclose such records simply because an agency email address is involved.  *Philadelphia Inquirer*.[10]

---

[10] The dissent infers that just because something in a personal email is accessible to all on the internet, it somehow transforms a private email into an activity of an agency. An activity of an agency is an activity that deals with the agency's business; private emails that send pornography (whatever that is when basic cable has images that would have been considered pornographic not that long ago) have nothing to do with an agency's business. As to the comment that public funds were used to pay for computers and employees' salaries, again, that is not the standard for what is an activity of an agency.  Remember, personal emails were permitted under the Attorney General's email policy and they were understood to be personal.  Moreover, under the dissent's reasoning, just because government equipment is used on employee time, a personal email cannot be received or sent on a government computer or, for that matter, a personal phone call cannot be made on a government phone.

In any event, if private emails that have nothing to do with an agency's business are somehow transformed into public records, Section 708(b)(17)(6) of the RTKL, 65 P.S. §67.708(b)(17)(6), which provides that public records need not be released if they "constitute an unwarranted invasion of privacy," would come into play.  Then, under *Pennsylvania State Education Association ex rel. Wilson v. Commonwealth of Pennsylvania, Department of* **(Footnote continued on next page…)**

**B.**

However, even if, assuming *arguendo*, the requested emails can somehow be deemed "public records" under Section 102, they are exempt from disclosure under the non-criminal investigation exemption of the RTKL.

Section 708(b)(17)(vi)(A) of the RTKL provides that *all* records held by an agency are presumed to be "public," and, thus, are generally subject to disclosure unless they are: (1) exempt under Section 708;[11] (2) protected by a privilege; or (3) exempt from disclosure under any other Federal or State law or regulation or judicial order or decree. 65 P.S. §67.305(a). Section 708(b)(17) exempts records relating to a non-criminal investigation. This Court has defined a non-criminal investigation as "a systematic or searching inquiry, a detailed examination, or an official probe" that is not criminal in nature. *Pennsylvania Public Utility Commission v. Gilbert*, 40 A.3d 755, 759 (Pa. Cmwlth. 2012). Where an agency asserts an exemption or a privilege, it has the burden of proving by a preponderance of the evidence that a particular record is exempt from public

---

**(continued…)**

*Community and Economic Development*, 50 A.3d 1263 (Pa.2012), before release by an agency of personal emails, employees and third parties who received or sent those emails would be required to be given written notice and a meaningful opportunity to object at the request stage to the disclosure of their emails to establish that their release would be an unwarranted invasion of their privacy.

[11] 65 P.S. §67.708.

11

access.[12] *Heavens v. Pennsylvania Department of Environmental Protection*, 65 A.3d 1069, 1074 (Pa. Cmwlth. 2013); see 65 P.S. §67.708(a)(1).

In this matter, the request in itself establishes that the documents sought are related to an investigation internal to the OAG as it calls for emails "which were part of Special Deputy H. Geoffrey Moulton's review," thereby indicating that an investigation is underway, and that disclosure of such documents is contrary to the RTKL's provisions.

Accordingly, the Appeals Officer's determination requiring the OAG to produce Requestor's requested emails is reversed.

_____
DAN PELLEGRINI, President Judge

---

[12] A preponderance of the evidence is such evidence as would lead a fact-finder to find that the existence of a contested fact is more probable than the nonexistence of the contested fact. *Pennsylvania State Troopers Association v. Scolforo*, 18 A.3d 435, 438-39 (Pa. Cmwlth. 2011).

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Office of       :
Attorney General,             :
          Petitioner     :
                           :
         v.          : No. 2097 C.D. 2014
                           :
Brad Bumsted, Capitol Reporter  :
Pittsburgh Tribune-Review,    :
          Respondent   :

# **O R D E R**

AND NOW, this 15th day of March, 2016, the Final Determination of the Pennsylvania Office of Attorney General's Right-to-Know Appeals Officer dated October 22, 2014, is reversed.

_____
DAN PELLEGRINI, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Office of        :
Attorney General,          :
          Petitioner    :
                     :     No.  2097 C.D. 2014
      v.         :
                     :     Submitted:  December 31, 2015
Brad Bumsted, Capitol Reporter    :
Pittsburgh Tribune-Review,    :
          Respondent   :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

DISSENTING OPINION
BY JUDGE McCULLOUGH             FILED:  March 15, 2016

I respectfully dissent.  The Majority hinges its analysis on *Pennsylvania Office of Attorney General v. Philadelphia Inquirer*, 127 A.3d 57 (en banc), which I find to be distinguishable on its facts.  In that case, the requester specifically sought emails that are "**of a personal nature** and involve pornographic or otherwise inappropriate material" sent to or from employees of the Office of Attorney General (OAG).  *Philadelphia Inquirer*, 127 A.3d at 59 (emphasis added).  This Court framed the issue on appeal as "whether **personal** emails are **public** records within the meaning of the [Right-to-Know Law] RTKL[1] . . . ." *Philadelphia Inquirer*, 127 A.3d at 60 (emphasis added).  Stressing the dichotomy

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

between information which is "personal" (and not a public record) and information that documents "a transaction or activity" of an agency (which is a public record),[2] we concluded that the requested "emails only related to **personal activity** of individuals." *Id.* at 63 (emphasis added). As I read *Philadelphia Inquirer*, our conclusion was necessarily compelled by the facial language of the requester's request, which explicitly sought "personal" emails containing pornographic images.

In this case, however, Requester did not request "personal" emails. Instead, he sought emails "**reviewed by Special Deputy Geoffrey Moulton that contain pornographic images" sent by OAG employees**. (Maj. slip op. at 2.) In other words, the request is for emails sent by OAG employees and specifically reviewed by an employee of the OAG in the course and scope of his employment. In my view, the dispositive factor in *Philadelphia Inquirer* is simply missing here. Therefore, I believe that our decision in *Philadelphia Inquirer* is factually inapposite.

Because the request does not seek, on its face, personal emails, the question becomes whether several thousand allegedly "pornographic images" sent via email between OAG employees and reviewed by a senior deputy on behalf of the OAG evidence, and are received in connection with, an "activity" of an agency. *Philadelphia Inquirer*, 127 A.3d at 62. Correspondence among staff via email is "a natural or normal function or operation," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 22 (2002) (defining "activity"), of the OAG and is an

---

[2] Section 102 of the RTKL defines "public record" as "[a] record ... of a Commonwealth ... agency," and defines "record" as "[i]nformation ... that documents a transaction or activity of any agency that is created, received, or retained pursuant to law or in connection with a transaction, business or activity of the agency." 65 P.S. §67.102.

integral part of its employees' routine daily affairs. Stated otherwise, when employees utilize a governmental email account to exchange thousands of emails of a particular nature, their conduct becomes an "activity" of that agency. This is especially true considering that there is nothing inherently "personal" about pornographic images that are located on the internet and accessible to the public in general and/or do not directly relate to the private affairs of the employee. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1686 (2002) (defining "personal," in pertinent part, as "of or relating to a particular person;" "peculiar or proper to private concerns;" and "not public or general.").

The RTKL was implemented to allow the public to scrutinize and challenge actions of government officials. *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012). Moreover, public funds are used to purchase computer infrastructure, and governmental email accounts are intended to be used for the purpose of conducting government business. Because public funds were used to pay for the computers and the employees' salaries, the employees here are indisputably conducting an "activity" on behalf of the OAG, as further evidenced by the fact that a senior deputy undertook a review of same on behalf of the agency. This is particularly true given that thousands of emails of a particular nature were exchanged, and, moreover, were allegedly exchanged in violation of OAG policy.

As noted by Judge Bonnie Leadbetter in her dissenting opinion to *Philadelphia Inquirer*, "if communications regarding a particular subject matter are shown to be pervasive and widespread within an agency, they may reach the level of being an activity of that agency." *Philadelphia Inquirer*, 127 A.3d at 64 (Leadbetter, J., dissenting).

Here, the record reflects that during work hours, and using computers that were purchased with public tax dollars, employees transmitted several thousand emails purportedly containing pornographic activity, an activity which is also an improper use of the OAG's time and resources and which prompted a review by the OAG itself. I believe Requester has demonstrated a "pervasive and widespread" communication within an agency that constitutes an activity of the agency.

For these reasons, I would conclude that *Philadelphia Inquirer* does not control our disposition. Because Requester requested documents that constitute public records under the RTKL, and the OAG has failed to prove the applicability of an exemption,[3] I would affirm the OAG's Appeals Officers Final Determination. Therefore, I respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge

---

[3] Unlike the Majority, I would not conclude that the request, on its face, establishes that the requested records are covered under the noncriminal investigative exception located at section 708(b)(17)(ii) of the RTKL, 65 P.S. §67.708(b)(17)(ii). Significantly, the OAG has failed to point to any statutory or regulatory mandate to conduct internal investigations, and, absent such explicit authority, the applicability of the noncriminal investigative exception must be demonstrated with affirmative evidence. *Cf. Coulter v. Department of Public Welfare*, 65 A.3d 1085, 1088-89 (Pa. Cmwlth. 2013) (concluding that the facial language of a request may prove the applicability of the noncriminal investigative exception where statutes and/or regulations prove that the agency conducted a noncriminal investigation in accordance with those statutes and/or regulations). I agree with the OAG's Appeals Officer's determination that the OAG's evidence in this case was insufficient to establish that the requested records were exempt under the noncriminal investigative exemption. (Final Determination at 9-10.)