IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Penncrest School District,                :
                                          :
                        Appellant         :
                                          :
            v.                            : No. 780 C.D. 2024
                                          : Argued: February 4, 2025
Bethany Rodgers                           :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY JUDGE WOJCIK                              FILED: May 6, 2025


            Appellant Penncrest School District (District) appeals from the May 17, 2024 order of the Crawford County Court of Common Pleas (trial court) granting Bethany Rodgers' (Requester) motion to deny the District's petition for review (PFR), denying and dismissing the District's PFR, affirming the Office of Open Records' (OOR) Final Determination dated April 21, 2023, and directing the District to conduct a good faith search of its records, including inquiring with the District's Superintendent and members of its Board of Directors (Board) as to whether they possess any responsive emails (relating to transactions or activities of the District or its Board), including in their personal email accounts, and provide all responsive records to Requester within 30 days. The District contends that the trial court erred in determining that emails sent and received by individual Board members via their

private email accounts are public "records" subject to disclosure under Pennsylvania's Right-to-Know Law (RTKL).[1] Upon review, we affirm.

## I. Background

On January 27, 2023, Requester filed a RTKL request (Request) with the District seeking the production of:

> [E]lectronic copies of correspondence (emails or text messages) between [the District's Board members] or Superintendent [Timothy] Glasspool and representatives of the Pennsylvania Family Institute . . . or the Independence Law Center [(Law Center)]. . . , including but not limited to Michael Geer, Thomas Shaheen, Randall Wenger, Cheryl Allen, Jeremy Samek, Janice Martino-Gottshall, Kurt Weaver, Robert Albino, Ruth Wilson, Emily Kreps, Dan Bartkowiak, Alexis Sneller, Allison Rishel, Tina Brumagen and Kenneth Stracuzzi from [August] 1, 2022, to [January] 27, 2023.

Reproduced Record (R.R.) at 12a. After invoking a 30-day extension, the District searched records in its possession and control and produced two emails from two Board members found on District accounts responsive to her Request.

The first email was sent by Board member David Valesky to the then-current Board President Luigi DeFrancesco via their District email accounts. R.R. at 13a. The email stated: "Here is a court ruling on a similar policy to ours. I spoke to [the] Law Center and they forwarded me a lot of info. *They are willing to help with future policy development.*" *Id*. (emphasis added). The email provided Jeremy Samek's contact information at the Law Center.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

The second email was sent by Mr. DeFrancesco, *from his personal email account*, to the Law Center, in which he copied Superintendent Glasspool on his District email account. R.R. at 14a. The email stated:

> I am the current Board president of the [District]. David Valesky gave me your email. He told me that your foundation might help us if needed. After the Board passed policies 123 and 109.2 the following occurred: A Board director resigned and our solicitor also resigned. At this time, we have no legal backup. The original complaint filed by Thomas Cagle was about asking [for] documents from the District about conversation[s] between Valesky and DeFrancesco. The [D]istrict does not have any documents nor Valesky and DeFrancesco. Mr. Cagle tried to convince the court that Valesky's post on Facebook was part of an official discussion of the Board. The [D]istrict appealed the lower court decision at the Commonwealth Court. Now Mr. Cagle, somehow, he tries to connect the passing of policy 109.2 to the original appeal. In my humble opinion the latest filing should be squashed[,] but, at this time, we have no one to do it. I am aware that time is of the essence.
>
> If you can possibly help us[,] please let me know. My cell phone is [###-###-####;] the [D]istrict's [S]uperintendent['s] cell is [###-###-####].
>
> Sincerely,
> Luigi DeFrancesco P.E.
> Board President

*Id*.

Although Mr. Valesky's email to Mr. DeFrancesco recounted his prior contacts with the Law Center and referred to information received, none of Mr. Valesky's emails with the Law Center were produced. Requester contacted the District's Open Records Officer and inquired as to whether individual Board members searched their personal accounts for correspondence responsive to her

3

Request. Two days later, the District advised her that the District had provided her with all records in its possession and control responsive to the Request.

Requester appealed the District's response to OOR arguing, *inter alia*, that the District should have directed Board members to search their personal email accounts and personal electronic devices for records responsive to her request. The District defended that such emails are not "records" of the agency because the Board members were acting independently when communicating with the Law Center and not in their official capacity as a lawfully convened body.

By Final Determination dated April 21, 2023, OOR directed the District to conduct a good faith search of its records, including asking Board members and District employees and officials named in the Request whether they possessed emails, including from their personal email accounts, responsive to the Request.

From this decision, the District timely filed a PFR with the trial court, which Requester moved to deny. Following *de novo* review, the trial court adopted OOR's findings of fact, which it noted were not in dispute, and conclusions of law. The trial court applied the legal standard that an email is a "record" under the RTKL if it is sent or received in the Board member's official capacity and documents a transaction or activity of the District. Relying on *Easton Area School District v. Baxter*, 35 A.3d 1259 (Pa. Cmwlth. 2012), and *Barkeyville Borough v. Stearns*, 35 A.3d 91 (Pa. Cmwlth. 2012), the trial court concluded that the two emails the District produced, which referred to District policies and events that occurred after the passing of such policies, documented activities of the District and met the RTKL's definition of a "record," "as would any similar electronic correspondence," even if such correspondence was located on personal email accounts or was sent by Board members in their individual capacity. Trial Court Opinion, 5/17/24, at 3-4.

4

By opinion and order dated May 17, 2024, the trial court granted Requester's motion to deny the PFR, affirmed OOR's Final Determination, and directed the District to instruct its employees and officials to conduct a good faith search of their personal emails for records responsive to the Request. From this decision, the District now appeals.[2]

Shortly thereafter, the District filed an Application for Stay of Appeal in this Court pending the Supreme Court's decision in *Penncrest School District v. Cagle*, 293 A.3d 783 (Pa. Cmwlth. 2023), *appeal granted*, 308 A.3d 773 (Pa. 2023), which Requester opposed. By Order dated August 8, 2024, this Court denied the Application "because the present case involves access to [] [B]oard members' personal email accounts under the RTKL, which is an issue separate and distinct from the issue in *Cagle*," which involved the disclosure of public officials' social media activity. Commonwealth Court Order, 8/8/24, at 1.

## II. Issue

On appeal, the District asks this Court to decide whether emails sent and received by individual Board members via individual Board members' private email accounts are public "records" subject to disclosure under the RTKL.[3]

---

[2] Our review is limited to determining "whether the trial court erred as a matter of law or abused its discretion by making factual findings unsupported by substantial evidence." *Kyziridis v. Office of Northampton County District Attorney*, 308 A.3d 908, 913 (Pa. Cmwlth. 2024).

[3] In its reply brief, the District contends that Requester raises new factual allegations about the Law Center (*see* Requester's Brief, at 2-5) that are outside of the record. Any information about what the Law Center does is irrelevant and will not be considered on appeal. *See Brandywine Hospital, LLC v. County of Chester Board of Assessment Appeals*, 291 A.3d 467, 488 (Pa. Cmwlth. 2023) (holding assertions outside of the record may not be considered on appeal).

5

### III. Discussion

The District maintains that the emails sought by Requester in this matter are not subject to disclosure under the RTKL because they are not "records." According to the District, the emails are not "records" because they do not document a transaction or activity "of the agency." Instead, the requested emails were sent and received via personal email addresses of individual Board members to gather information for their own edification. The District argues that, since individual Board members cannot bind the District, or further the District's interests, no email to or from an individual member can ever constitute a public record.

Under the RTKL, agencies are required to provide access to "public records" for inspection and duplication upon request. Section 701 of the RTKL, 65 P.S. §67.701; *Central Dauphin School District v. Hawkins*, 286 A.3d 726, 741 (Pa. 2022). The RTKL "empower[s] citizens by affording them access to information concerning activities of the government." *Miller v. County of Centre*, 173 A.3d 1162, 1168 (Pa. 2017). The "courts should liberally construe the RTKL to effectuate its purpose of promoting access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions." *Pennsylvania Interscholastic Athletic Association, Inc. v. Campbell*, 310 A.3d 271, 281 (Pa. 2024) (citation and quotation omitted).

Chapter 9 of the RTKL sets forth an agency's duties when responding to a request for records. *Uniontown Newspapers, Inc. v. Pennsylvania Department of Corrections*, 243 A.3d 19, 25 (Pa. 2020). Section 901 of the RTKL provides:

> Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or

6

financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request.

65 P.S. §67.901. An agency's open records "officer . . . has a duty to advise all custodians of potentially responsive records about the request, and to obtain all potentially responsive records from those in possession." *Uniontown Newspapers*, 243 A.3d at 25 (citation and quotation omitted). "If the agency does not possess the records in question, . . . the agency must take reasonable steps to secure the records . . . and then make a determination if those records are exempt from disclosure." *Id.* (citation and quotation omitted).

When an agency denies a request, in whole or in part, the written denial must provide a description of the record requested and the specific reasons for the denial, including citation to supporting legal authority. Section 903 of the RTKL, 65 P.S. §67.903. The agency denying the request bears the burden of proving "by a preponderance of the evidence that the requested information is privileged or otherwise exempt from disclosure." *Cagle*, 293 A.3d at 789; *see* Section 708 of the RTKL, 65 P.S. §67.708.

Section 102 of the RTKL defines "record" as any "[i]nformation, regardless of physical form or characteristics, that *documents a transaction or activity of an agency* and that is created, received or retained . . . *in connection with a transaction, business or activity of the agency*." 65 P.S. §67.102 (emphasis added). It defines "public record" as a "record, . . . , of a Commonwealth or local agency," that is not expressly exempted by the RTKL. *Id.* Whether the information requested constitutes a "record" is a "preliminary, threshold issue that must be decided before reaching the question of whether any exceptions . . . apply." *Stearns*, 35 A.3d at 94.

7

Over the years, the courts have parsed and interpreted the following phrases contained in the definition of "record": "(1) 'documents a transaction or activity of an agency'; (2) 'in connection with a transaction, business or activity'; and (3) 'of the agency.'" *Cagle*, 293 A.3d at 789.

To "document[] a transaction or activity of an agency" means to prove, support, or evidence such activity. *Cagle*, 293 A.3d at 789; *Stearns*, 35 A.3d at 95. This Court has held that *personal* emails sent or received using an agency email address or located on an agency's computers are not "records," because they do not "document[] a transaction or activity of an agency," even when the agency has a policy precluding personal use of agency computers. *Baxter*, 35 A.3d at 1264.

"[I]n connection with a transaction, business or activity" means that it must relate to or further agency activity. *See Pennsylvania Office of Attorney General v. Bumsted*, 134 A.3d 1204 (Pa. Cmwlth. 2016) (holding pornographic emails "cannot relate to any [agency] transaction or activity"). We cautioned that classifying "private emails that have nothing to do with an agency's business" as "public records" would implicate privacy concerns. *Id.* at 1209 n.10.

To be "of" an agency "indicates a record's origin, its owner or possessor, or its creator." *Bagwell v. Pennsylvania Department of Education*, 76 A.3d 81, 91 (Pa. Cmwlth. 2013). "However, for records to be 'of' an agency, they do not need to originate with or be created by that agency." *Id.*; *accord Michalski v. Department of Corrections (Office of Open Records)*, 315 A.3d 903, 907 (Pa. Cmwlth. 2024).

Relying on *In re: Silberstein*, 11 A.3d 629 (Pa. Cmwlth. 2011), the District argues that private emails of individual Board members are not records because Board members cannot act alone on behalf of the District, and, therefore,

8

their emails cannot constitute an activity of the District. *Silberstein* involved a RTKL request seeking, *inter alia*, all electronic or written correspondence between two township commissioners and township citizens regarding applications for development projects in the township. 11 A.3d at 633. The township produced documents and emails on computers under its possession and control but refused to obtain any responsive documents or emails on computers owned and maintained solely by the individual commissioners or their private businesses. *Id*. The OOR concluded that the documents on the commissioners' personal computers were records in the township's possession and were subject to disclosure. On appeal, the trial court reversed the OOR, reasoning that individual commissioners were not a "governmental entity," had "no authority to act alone on behalf of" the township, and did not have any obligation to keep records of every email, note, or conversation in which they discussed township matters in an email on their private computers. *Id*. at 631.

On further appeal, in affirming the trial court's decision, this Court held that emails and documents located on the commissioners' personal computers would not fall within the definition of a "record" as "any record personally and individually created" by a commissioner "would not be a documentation of a transaction or activity of [the t]ownship, as the local agency." *Silberstein*, 11 A.3d at 633. We also explained that such records would not "have been created, received or retained pursuant to law or in connection with a transaction, business or activity of [the t]ownship." *Id*. In other words, unless the emails and other documents in the commissioners' possession "were produced with the authority of [the t]ownship, as a local agency, or were later ratified, adopted or confirmed by [the t]ownship," they were not "public records" because they are not "of the local agency." *Id*.

9

Notwithstanding, we opined that the township was still required to "inquire of its public officials" whether they were "in possession, custody or control of a requested record that could be deemed public." *Id*. at 633-34.

After *Silberstein*, we considered whether emails stored on township supervisors' personal email accounts were public records. *See Mollick v. Township of Worcester*, 32 A.3d 859 (Pa. Cmwlth. 2011). In *Mollick*, the request sought email communications transmitted by and between the township supervisors on their personal computers and/or via their personal email accounts relating to township business. *Id*. at 861. The requester asserted that any "deliberation of township business by a quorum of the [three township] supervisors" would clearly constitute an "activity of the township" regardless of whether it was contained on a personal computer or personal email account. *Id.* at 872. We determined that the location of the emails on the supervisors' "personal computers and/or personal email accounts" was not dispositive in determining whether the emails met the definition of "record." *Id*. As for whether the emails documented a transaction or activity of the township, we distinguished *Silberstein*, reasoning that the requester was not requesting emails in which a township supervisor "acted individually, alone, or communicated only with an outside third party." *Id*. at 873. We held that "if two or more township supervisors exchanged emails that document a transaction or activity of the township and that were created, received, or retained in connection with a transaction, business, or activity of the township, the supervisors may have been acting as the township . . . ." *Id*. at 872. Consequently, such emails would constitute records "of the township" under the RTKL, notwithstanding the fact that the emails were sent on personal computers using personal email addresses and on personal time. *Id*. at 872-73.

10

Then, in *Stearns*, this Court addressed whether emails by and between four borough council members on their personal computers constituted records reflecting council business. We again emphasized that the location of the records on council members' personal computers was not the "litmus test." 35 A.3d at 93; *see Meguerian v. Office of the Attorney General*, 86 A.3d 924, 930 (Pa. Cmwlth. 2013) (holding "[e]mails are not considered records of an agency simply because they are sent or received using an agency email address or by virtue of their location on an agency computer"). Rather, we focused on whether the emails were created "by public officials, in their capacity as public officials, for the purpose of furthering [agency] business." *Stearns*, 35 A.3d at 97. The emails were between individual council members and documented the borough's consideration of land development plans. *Id*. at 95. We determined that those council members were acting in their official capacity as elected officials of the borough while exchanging the emails in question. *Id*. Because the emails furthered borough business, we concluded they were records under the RTKL. *Id.* at 98. As this Court later noted, the *Stearns* Court "did not address whether, in order to qualify as 'furthering borough business,' it was necessary to find that a quorum or majority of the borough council was required to transact borough business" or "whether the emails 'were produced with the authority of [the borough], as a local agency, or were later ratified, adopted or confirmed by' the borough." *Cagle*, 293 A.3d at 792 n.12.

In *Baxter*, we considered whether *personal* emails sent or received from school board members, a school district superintendent, and the general school board using an agency email address or an agency-owned computer were public records. We rejected the requester's "contention that all emails on a public computer are automatically public records," even where the agency had a policy limiting use of

11

computers to official business. 35 A.3d at 1262. We explained that a record is "information" only when it "documents a transaction or activity of an agency." *Id.* at 1264; *accord Pennsylvania Office of Attorney General v. Philadelphia Inquirer*, 127 A.3d 57, 62 (Pa. Cmwlth. 2015) ("What makes an email a 'public record,' then, is whether the information sought documents an agency transaction or activity, and the fact [of] whether the information is sent to, stored on or received by a public or personal computer is irrelevant in determining whether the email is a 'public record.'"). Since the emails responsive to the request were merely "personal emails" and did not document any transaction or activity of an agency, we held they were not records subject to disclosure under the RTKL. *Baxter*, 35 A.3d at 1264.

Significantly, in *Baxter*, we rejected the school district's argument, which is renewed in this appeal, that "because an individual school board member does not have the authority to transact business or act on behalf of the entire school board, any email sent to or from an individual school board member's official email address cannot be considered a record under the RTKL." 35 A.3d at 1264 (citing *Stearns*) (footnote omitted). Relying on *Stearns*, we opined that, although "an individual school board member lacks the authority to take final action on behalf of the entire board, that *individual acting in his or her official capacity, nonetheless, constitutes agency activity when discussing agency business.*" *Id.* (emphasis added); *see Clearfield County v. Bigler Boyz Enviro, Inc.*, 144 A.3d 258, 265 (Pa. Cmwlth. 2016) (favorably citing, but distinguishing, *Baxter* in holding that a county commissioner's handwritten notes concerning two unsolicited phone calls she received from citizens did not constitute records because they did not document a transaction, business, or activity of the county); *but see Cagle*, 293 A.3d at 792 n.13 (criticizing *Baxter* for its lack of analysis).

12

More recently, in *Cagle*, we explored whether a school district's board members' social media activity constituted public records. While noting that the foregoing cases involving email requests provided guidance, we opined that strictly applying principles regarding emails to social media posts "may be unwise" because of differences between the two forms of communication. *Cagle*, 293 A.3d at 793. We observed:

> If a public official posts on the agency's official, authorized social media account, then the RTKL analysis appears relatively straightforward. Presumptively, such posts would be public records. However, if a public official posted a personal social media post, e.g., a family birthday, wedding, or other gathering, on the agency's social media account, the post probably would not be a record. *A record must document an agency transaction or activity and be created in connection with agency business*.

*Id*. at 799-800 (citation and footnote omitted) (emphasis added). However, where a public official posts on his personal social media account, the RTKL analysis is not as "straightforward." *Id*. at 800.

Consequently, we fashioned the following analytical framework for resolving social media requests under the RTKL:

> 1. An examination of "the social media account itself, including the private or public status of the account, as well as whether the account has the 'trappings' of an official agency account." This includes consideration of whether the person operating the account has an actual or apparent duty to do so, and whether the authority of the public office at issue is necessary to operate the account. The examination may not focus solely on the "trappings" of the account but must also consider "the universe of responsive posts."

13

2. An examination of the posts at issue. This includes consideration of "whether such posts prove, support, or evidence a transaction or activity of an agency" and "whether the posts were created, received, or retained by law or in connection with a transaction, business, or activity of an agency." A post does not necessarily "prove, support, or evidence a transaction or activity of an agency" if it is merely informational in nature.

3. An examination of "official capacity." That is, the posts at issue "must be created, received, or retained by public officials in their official capacity, *i.e.*, scope of employment, as public officials." This includes consideration of "whether the information at issue was produced under the agency's authority or subsequently ratified, adopted, or confirmed by the agency, *i.e.*, authorized activity." This may involve a review of whether the agency required or directed the posts, *or whether the posts "furthered the agency's interests."*

*Wyoming Borough v. Boyer*, 299 A.3d 1079, 1084 (Pa. Cmwlth. 2023) (quoting and summarizing *Cagle*, 293 A.3d at 799-802) (emphasis added).

Applying the foregoing here, the District does not dispute that the two emails that it provided in response to the Request constituted records under the RTKL. Both emails documented District activities relating to policy development and ongoing litigation exchanged between the Law Center and two Board members, acting in their official capacities. The emails were also sent and/or received via District email accounts. The District asserted no exemptions.

Notably, the emails alluded to other emails discussing the same activity. The emails revealed that Mr. DeFrancesco used his personal email account to communicate with the Law Center, which in turn had forwarded Mr. Valesky "a lot of info" relating to the same topic. R.R. at 13a. Yet, the District never inquired of its Board members or Superintendent whether they had emails on their personal

14

email accounts responsive to the Request. *See Uniontown Newspapers*, 243 A.3d at 25.

The District defends that emails sent or received via the Board members' private email accounts do not constitute records because individual board members, acting alone, cannot bind the entire board or further agency interests. As this Court has firmly held, the location of an email on a personal computer or personal email account is not determinative as to a record's public nature. *See Stearns*, 35 A.3d at 93; *Mollick*, 32 A.3d at 972-73. The determinative factor is whether the email documents "a transaction or activity of an agency . . . in connection with a transaction, business or activity of the agency." 65 P.S. §67.102; *see Philadelphia Inquirer*, 127 A.3d at 62; *Baxter*, 35 A.3d at 1264; *Stearns*, 35 A.3d at 95. Although an individual school board member lacks the authority to bind the school district, an "individual acting in his or her official capacity . . . *constitutes agency activity when discussing agency business*."[4] *Baxter*, 35 A.3d at 1264 (emphasis added and footnote omitted).

Insofar as the District draws support from *Cagle* for a narrower interpretation of "official capacity," *Cagle* was limited to social media, not emails.

---

[4] Indeed, under Section 422 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §4-422, "no business shall be transacted" unless a majority of the members of a board of school directors, *i.e.*, a quorum, are present at the meeting. School board members or directors can only "bind" the district they represent when lawfully convened as a body. *School District of Philadelphia v. Framlau Corp.*, 328 A.2d 866, 870 (Pa. Cmwlth. 1974) (holding school board president, acting alone, could not lawfully enter a settlement agreement binding the district without the board's consent). Notwithstanding, the definition of "record" under the RTKL is not limited to binding "business" transactions but includes "activities" of an agency. 65 P.S. §67.102. School board members acting alone in their official capacity can engage in various "activities" in furtherance of a school district's interests, such as acting as a delegate at a convention of school directors; participating in workshops, conferences, or training programs; and developing new policies or procedures for consideration, to name a few.

*See Boyer*, 299 A.3d at 1084-85. Even under *Cagle*, one test for determining whether a person is acting in his or her "official capacity" is whether he or she "furthered the agency's interests." 293 A.3d at 802.

The District's position that individual Board members were merely gathering information for their own opinion and were not discussing District business or furthering the District's interests is not supported by the evidence. Mr. Valesky testified that his contacts with the Law Center arose from his duty and obligation, as a Board member and chairman of the Board's policy committee, to research and obtain information "to help with development" of school board policies. R.R. at 268a-71a. He used his personal email to communicate with the Law Center. *Id*. at 11a, 295a. Mr. Valesky testified that the information he received from the Law Center specifically "dealt with issues that were before the [B]oard." *Id*. at 282a. He found the information persuasive and helpful in forming his position on District policies. *Id*. at 273a-74a, 281a, 298a. Mr. Valesky used the information from the Law Center in his discussions with the Board about future policies under consideration. *Id*. at 284a.

Mr. DeFrancesco testified that, using his personal email account, he emailed Jeremy Samek of the Law Center to request the Law Center's legal help because "the [D]istrict was in trouble." R.R. at 224a, 226a. The District's solicitor had recently resigned in the aftermath of controversial policies and there was pending litigation (*Cagle*). *Id*. at 224a-25a. Mr. DeFrancesco testified: "We had no legal representation to guide us. I, as the president, [] was concerned about that." *Id*. at 225a. Mr. DeFrancesco wanted the attorneys at the Law Center to "guide the [] District legally" on these pending legal matters. *Id*. Contrary to the District's arguments, Mr. Valesky's and Mr. DeFrancesco's testimony regarding their

16

communications with the Law Center supports a finding that their emails with the Law Center directly related to their work activities as Board members and discussed District business in furtherance of the District's interests.

Upon review, the trial court applied the proper legal standard that an email is a record if it is sent or received in the Board member's official capacity and discusses District business in furtherance of the District's interests. The District's attempts to distinguish this case from *Baxter* and *Stearns* are unpersuasive. In fact, the District's interpretation is so narrow that the two emails it produced would not constitute records because the individual Board members acted alone without authority to bind the District.

Based on the two emails produced and testimony presented, there is a strong indication that other emails discussing District business exist on the Board members' personal email accounts. The District failed to make any effort to have its Board members or Superintendent search their private email accounts for responsive records. Thus, we conclude that the trial court did not err or abuse its discretion by directing the District to have its Board members and Superintendent search their personal email accounts for responsive emails.[5]

---

[5] Once those emails are located, the District will have the opportunity to assess the emails and assert any applicable exemptions or make appropriate redactions. *See Uniontown Newspapers*, 243 A.3d at 25-26. Insofar as Requester asserts that the District has waived any exemptions by not previously raising them before the OOR, Requester's argument is premature because, without possession of the records, the District was not in a position to assert exemptions. As our Supreme Court explained in a situation where the records requested were not in the possession of the agency, but in the hands of a third-party contractor:

> [T]he agency must take reasonable steps to secure the records from the contractor and then make a determination if those records are exempt from disclosure. After gathering all the relevant records, the agency must then review the records and assess their public nature

**(Footnote continued on next page…)**

## IV. Conclusion

Accordingly, we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

---

under Sections 901 and 903 of the RTKL[, 65 P.S. §§67.901, 67.903]. . . . *[I]t is axiomatic that an agency cannot discern whether a record is public or exempt without first obtaining and reviewing the record.*

*Id*. at 25-26 (citations, quotations, and footnotes omitted, and emphasis added).

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Penncrest School District, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : No. 780 C.D. 2024 |
| | : | |
| Bethany Rodgers | : | |

**O R D E R**

AND NOW, this 6th day of May, 2025, the order of the Crawford County Court of Common Pleas, dated May 17, 2024, is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Penncrest School District, : 
              Appellant : 
       v. :    No. 780 C.D. 2024
: 
Bethany Rodgers :    Argued: February 4, 2025


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

DISSENTING OPINION
BY JUDGE McCULLOUGH              FILED: May 6, 2025


It is axiomatic that the burden of proving that a requested piece of information is a "public record" lies with the requester. *Barkeyville Borough v. Stearns*, 35 A.3d 91, 95 (Pa. Cmwlth. 2012). This Court has emphasized that, in order to constitute a "record" under the Right-to-Know Law (RTKL),[1] the requested information must document a transaction or activity of the agency. *Pennsylvania Office of Attorney General v. The Philadelphia Inquirer*, 127 A.3d 57, 60 (Pa. Cmwlth. 2015). "In establishing whether the information is a public record, the **requester must satisfy** a two-part test: First, the information must document a **transaction or activity** of the agency; and, second, the information must be created, received, or retained in connection **with the activity of the agency**." *Pennsylvania Office of Attorney General v. Bumsted*, 134 A.3d 1204, 1208 (Pa. Cmwlth. 2016) (emphasis added; internal quotation marks omitted). Here, Requester has failed to establish either prong.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

Specifically, the two emails that were produced by Penncrest School District (District) after its good faith search of the records on its own computers state only that Board members received "a lot of info" from the Law Center and that the foundation "might help" them. (Reproduced Record (R.R.) at 13a, 14a.) The RTKL requires that agencies search public records in their "possession." 65 P.S. § 67.901. In expounding upon that term, this Court has created a "constructive possession" concept which is not contained within the RTKL. But even in its application of such concept, it is important to first apply the actual language of the RTKL.

Here the District checked records in its possession and produced the emails that it had. Beyond that, the District stated it did not have any other responsive emails. In my view, as argued by the District, the request for any potential personal emails, not in the District's possession, and only identified as possibly "information gathering," does not establish that the members were using personal email accounts to document a transaction or activity of the District.

This Court's decision in *In re Silberstein*, 11 A.3d 629 (Pa. Cmwlth. 2011), is instructive. *Silberstein* involved email correspondence between a township commissioner and members of the public, and, in examining the agency's obligation pursuant to Section 901 of the RTKL, this Court explained:

> [A] distinction must be made between transactions or activities of an agency which may be a "public record" under the RTKL and the emails or documents of an individual public office holder. As pointed out by the trial court, Commissioner Silberstein is not a governmental entity. **He is an individual public official with no authority to act alone on behalf of the Township**.
>
> **Consequently, emails and documents found on Commissioner Silberstein's personal computer would not fall within the definition of record as any record**

**personally and individually created by Commissioner Silberstein would not be a documentation of a transaction or activity of York Township, as the local agency, nor would the record have been created, received or retained pursuant to law or in connection with a transaction, business or activity of York Township**. In other words, unless the emails and other documents in Commissioner Silberstein's possession were produced **with the authority** of York Township, as a local agency, **or were later ratified, adopted or confirmed by York Township**, said requested records cannot be deemed "public records" within the meaning of the RTKL as the same are not "of the local agency."

*Id.* at 633 (emphasis added).

Likewise, here, the individual Board members who may have sent emails from their personal computers and personal email accounts had no authority to act alone on behalf of the District or bind it in any form. Further, the two emails produced by the District as responsive to Requester's inquiry made no mention of any contract between any party implicated by this case or to any action a Board member had taken that was subsequently ratified by the Board. In light of this record, I would conclude that Requester has failed to meet her burden.

Further, assuming *arguendo* that a Board transaction or activity occurred for purposes of the RTKL, so there were records that could be construed as "public records" of the District, any <u>potential</u> emails at issue here would clearly qualify for a predecisional exception from public disclosure. This Court's decision in *Stearns* involved emails between borough council members sent through personal email accounts concerning borough business. In that case, we highlighted that even if items are found to be "public records," an exception may be applicable under Section 708(b)(10)(i)(A) of the RTKL, which provides in pertinent part:

PAM - 3

> The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. § 67.708(b)(10)(i)(A); *Stearns*, 35 A.3d at 98 n.6.[2] We have explained that in order for this exception to apply, an agency must show that "(1) the contents of the record are internal to the agency; (2) the contents of the record are deliberative; and (3) the deliberations reflected are predecisional, *i.e.*, occurred before an agency decision or course of action." *Anand v. Pennsylvania Insurance Department*, 329 A.3d 1, 15 (Pa. Cmwlth. 2024).

Again, assuming *arguendo* any potential emails could be construed as "public records" consistent with *Stearns*, "gathering information" has never been construed as an agency decision. As such, any potentially responsive emails sent from individual Board members' personal email accounts would necessarily be exempted from public disclosure as predecisional under 65 P.S. § 67.708(b)(10)(i)(A). The record reflects that, at most, the Board members were engaged in an information-gathering process that was predecisional in nature and occurred before the Board itself, or any member, attempted to take any formal action. Accordingly, I must respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge

---

[2] Unlike the agency in *Stearns*, the District raised this argument before the trial court and in its appellate brief. (District's Brief at 25.)