# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neil Anand,                   :
            Petitioner       :
                               :
           v.                :
                               :
Commonwealth of Pennsylvania  :
Pennsylvania Office of           :
Attorney General,              :   No. 493 M.D. 2022
           Respondent    :   Submitted: August 8, 2025


BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED: September 25, 2025

Neil Anand (Anand), pro se, petitions this Court for review of the Office of Attorney General's (OAG) Right-to-Know Law (RTKL)[1] appeals officer's August 31, 2022 Final Determination denying his appeal from the OAG's denial of his request (Request). Anand also seeks relief in this Court's original jurisdiction in the form of a Petition for Writ of Mandamus and/or Petition to Enforce pursuant to Pennsylvania Rule of Appellate Procedure 3761(b), Pa.R.A.P. 3761(b) (Petition). Anand presents four issues for this Court's review: (1) whether the OAG has unlawfully withheld records subject to timely production under the RTKL; (2) whether Independence Blue Cross, Inc., AmeriHealth HMO, Inc., Independence Blue Cross, LLC, Independence Health Group, Inc., Independence Hospital Indemnity Plan, Inc., Keystone Health Plan East, Inc., QCC Insurance Co.,

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

AmeriHealth Caritas, and Keystone First (collectively, Independence Companies) engage in governmental functions on the OAG's behalf; and (3) whether Anand has satisfied the legal requirements for mandamus or a petition to enforce and is entitled to attorneys' fees and costs.[2]   After review, this Court affirms the OAG's RTKL appeals officer's Final Determination and dismisses the Petition.

## Background

On May 31, 2022, Anand filed the Request with the OAG seeking:

[A]ll information, documents and records pursuant to [the] RTKL pertaining to the Independence Companies AND:

1. All data and documents since year 1990, at [the OAG] concerning the identities of past and/or present[] physicians or health care providers that have been arrested [], prosecuted criminally, or convicted after referral and/or provision of controlled substance medication prescribing data by an Independence Company and/or provision of health care billing data by an Independence Company for violations of:

   a. Corrupt Organizations and/or [Section 911 of the Crimes Code,] 18 Pa.C.S.[] § 911[;]

   b. Dealing in Proceeds of Unlawful Activities and/or [Section 5111 of the Crimes Code,] 18 Pa.C.S.[] § 5111[;]

---

[2] Anand presents the following issues in his Statement of Questions Involved: (1) whether the OAG, continuing and without lawful justification, withheld data and records that indisputably are subject to timely production under the RTKL; (2) whether the OAG violated the RTKL by withholding the requested information, records, and documents; (3) whether, under the RTKL, Anand has the right to obtain records and documents pertaining to the Independence Companies acting as a state actor in a joint partnership/joint enterprise with the OAG through the Healthcare Fraud Preventive Partnership; (4) whether this Court's intervention, and sanction of an award of attorneys' fees and costs are consequently required; (5) whether Anand satisfied the legal standards for mandamus; and (6) whether Anand satisfied the legal standards for petition to enforce. *See* Anand's Br. at 6.  This Court has restated the issues for clarity of analysis.

c. Insurance Fraud and/or [Section 4117 of the Crimes Code,] 18 Pa.C.S.[] § 4117[;]

d. Theft by Deception and/or [Section 3922 of the Crimes Code,] 18 Pa.C.S.[] § 3922[;]

e. Criminal Conspiracy and/or [Section 903 of the Crimes Code,] 18 Pa.C.S.[] § 903[;]

f. Health Insurance Portability and Accountability Act of 1996 ([]HIPAA[])[;[3]]

g. Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1[-201-10;]

h. Pennsylvania consumer protection laws (in general)[;]

i. Pennsylvania information privacy laws (in general)[;]

j. Data breaches involving health care entities (in general)[.]

2. All data and documents since year 1990, at [the OAG] concerning the identities of past and/or present[] physicians or health care providers that have been arrested, [] prosecuted criminally, or convicted with controlled substance medication prescribing data provided by an Independence Company[,] including but not limited to[,] opioid, benzodiazepine, or muscle relaxant[] medications data.

3. All data and documents since year 1990, at [the OAG] concerning the identities of past and/or present[] physicians or health care providers that have been arrested, [] prosecuted criminally, or convicted after[] controlled substance medication prescribing data[] was provided by an Independence Company pertaining to particular[] patients/Independence Company [m]embers.

---

[3] Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered Sections of 18, 26, 29, and 42 of the United States Code).

4. All data and documents since year 1990 at [the OAG] concerning the identities of past and/or present[] physicians or health care providers that have been arrested, [] prosecuted criminally, or convicted after medication tracking data or pharmacy prescribing data was provided by an Independence Company pertaining to particular[] patients/Independence Company [m]embers.

5. All data and documents since year 1990 at [the OAG] concerning the identities of past and/or present[] physicians or health care providers that have been arrested, [] prosecuted criminally, or convicted after referral by an Independence Company for concerns about the relationship between physicians and/or pharmacies[,] including but not limited to[,] Medicaid pharmacy providers.

Certified Record (C.R.) at 5-6.[4]

By June 7, 2022 letter, the OAG invoked a 30-day extension to respond to the Request pursuant to Section 902 of the RTKL. *See* 65 P.S. § 67.902. By letter dated July 7, 2022, the OAG denied the Request in part and stated that it could not be granted in part, because, after a good faith search, relative to Request items 1(a)-(e),

the OAG is not able to identify each and every record that may fit the parameters of your [R]equest[,] due to [sic] fact that [the OAG] does not maintain or categorize [its] files using the terms you provided. However, all of the responsive records identified, as well as those the OAG cannot identify with certainty, are by their very nature related to criminal investigations and are not subject to disclosure based on the below exemptions.

C.R. at 13. The OAG specifically declared that Request items 1(a)-(e) were exempt from disclosure pursuant to Section 708(b)(16)(ii), (iv), and (vi)(A) of the RTKL, 65 P.S. § 67.708(b)(16)(ii) (relating to investigative materials, notes, correspondence, videos, and reports), (iv) (relating to records that include

---

[4] Because the Certified Record pages are not numbered, this Court refers to the electronic pagination.

information made confidential by law or court order), (vi)(A) (relating to records that, if disclosed, would reveal the institution, progress, or result of a criminal investigation); Section 4549(b) of the Investigating Grand Jury Act,[5] Sections 9102 and 9106(c)(4) of the Criminal History Record Information Act (CHRIA),[6] and

---

[5] Section 4549(b) of the Investigating Grand Jury Act provides:

> Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the Commonwealth for use in the performance of their duties. The attorneys for the Commonwealth may with the approval of the supervising judge disclose matters occurring before the investigating grand jury including transcripts of testimony to local, [s]tate, other state or [f]ederal law enforcement or investigating agencies to assist them in investigating crimes under their investigative jurisdiction. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court. All such persons shall be sworn to secrecy, and shall be in contempt of court if they reveal any information which they are sworn to keep secret.

42 Pa.C.S. § 4549(b). "This Court has held that information presented to a grand jury cannot be disclosed in response to a RTKL request without a court order." *Anand v. Off. of Att'y Gen.* (Pa. Cmwlth. No. 663 C.D. 2022, filed Nov. 20, 2023), *appeal denied*, (Pa. No. 669 MAL 2023, filed June 17, 2024) (*Anand I*), slip op. at 17.

Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The unreported cases herein are cited for their persuasive value.

[6] Section 9106(c)(4) of CHRIA states:

> Investigative and treatment information shall not be disseminated to any department, agency[,] or individual unless the department, agency[,] or individual requesting the information is a criminal justice agency which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print[,] or other identifying characteristic.

18 Pa.C.S. § 9106(c)(4). Section 9102 of CHRIA defines *investigative information* as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." 18 Pa.C.S. § 9102. "This Court has held that information and materials obtained or

5

Section 300gg of HIPAA.[7]  *See* C.R. at 13-15.  The OAG added that it did not possess the records sought in Request items 1(f)-(j).  *See* C.R. at 15-16.  Further, the OAG denied Request items 2-5 as insufficiently specific, particularly because the Request spans 32 years and does not provide a subject matter or context by which the Request can be narrowed, but concluded that even if the OAG was able to determine the documents being sought, the OAG would withhold them as records of criminal investigations.  *See* C.R. at 16-17.

On July 22, 2022, Anand appealed to the OAG's RTKL appeals officer, arguing that the OAG refused to produce documents that contain purely factual information and that the records are no longer part of any ongoing OAG systemic or searching inquiries, official probes, and/or deliberations.[8]  *See* C.R. at 19-177.  By August 1, 2022 letter, the OAG's RTKL appeals officer acknowledged Anand's appeal; concluded that, because Requester did not address the fact that the OAG was unable to locate records responsive to Request items 1(f)-(j), he waived any issues related thereto; agreed with the OAG that Request items 2-5 were insufficiently

---

created by law enforcement in the course of conducting criminal investigations falls within either the RTKL's criminal investigation exemption or CHRIA."  *Anand I*, slip op. at 16.

[7]  The "HIPAA privacy rule prohibits disclosure of a patient's personal health information.  HIPAA regulations define 'health information' as information that 'relates to the past, present or future physical or mental health or condition of an individual; [and] the provision of health care to an individual.[']"  *Mann v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth.[] No. 1056 C.D. 2019, filed Jan[.] 22, 2021), slip op. at 8 n.10 . . . (citing 45 C.F.R. § 160.103)."

*Anand I*, slip op. at 21 n.9.  Section 67.708(b)(5) of the RTKL likewise specifically exempts from disclosure "individually identifiable health information."  65 P.S. § 67.708(b)(5).

[8]  Anand spends nearly 150 pages of his appeal explaining his purpose for the Request.  However, Section 301(b) of the RTKL warns that "[a] Commonwealth agency many not deny a requester access to a public record due to the intended use of the public record by the requester unless otherwise provided by law."  65 P.S. § 67.301(b).  Therefore, a requester's "motivations . . . are immaterial under the RTKL."  *Pa. State Police v. Grove*, 161 A.3d 877, 880 n.1 (Pa. 2017).

specific for the OAG to conduct a good faith search; and offered Anand the opportunity to clarify that portion of the Request. *See* C.R. at 178-181. The OAG's RTKL appeals officer also permitted the parties to further supplement their respective positions. *See id.* at 181.

On August 11, 2022, Anand provided the OAG's RTKL appeals officer with a clarified Request wherein he "expanded the [5] 'general' queries and [10] 'general' sub-queries concerning the Independence Companies to 70+ specific detailed requests with extreme particularity to enable the OAG . . . to conduct a good-faith search for records" and, as a "gesture of good faith[,]" limited the Request from "2005 to the present[.]" C.R. at 183; *see also* C.R. at 188-210.

On August 12, 2022, the OAG supplemented its July 7, 2022 Response with unsworn affidavits from Elizabeth Madigan (Madigan), Senior Deputy Attorney General assigned to the Medicaid Fraud Control Section (MFCS) of the OAG's Criminal Law Division, and Robert LaBar (LaBar), Chief Deputy Attorney General for the OAG's Insurance Fraud Section, representing that because it does not maintain or categorize records based on terms Anand included in Request items 1(a)-(e), the OAG would have to manually search thousands of files, which would be burdensome and impossible under the RTKL's deadlines. *See* C.R. at 211-312. The affidavits further supported that Madigan identified three MFCS investigations and LaBar identified three Insurance Fraud Section investigations identifiable as responsive to Request items 1(a)-(e), but that documents related thereto were exempt from disclosure under the RTKL's criminal investigative exemption, the Investigating Grand Jury Act, CHRIA, and HIPAA. *See* C.R. at 300-312.

On August 18, 2022, the OAG responded to Anand's clarified Request, representing that Anand's August 11, 2022 attempt to clarify Request items 2-5 introduced approximately 100 new categories of records with no discernable connection to the original Request and, thus, the OAG's RTKL appeals officer

7

should uphold the OAG's original Response that Request items 2-5 are insufficiently specific. *See* C.R. at 313-314.

On August 31, 2022, the OAG's RTKL appeals officer issued the Final Determination denying Anand's appeal. *See* C.R. at 315-319. Based on the affidavits, the OAG's RTKL appeals officer agreed with the OAG that the records responsive to Request items 1(a)-(e) were exempt under the RTKL's criminal investigative exemption.[9] *See id.* The OAG's RTKL appeals officer observed that, despite Anand's opportunity to supplement his Request, he did not specify why the records were not exempt and, thus, were public records subject to access. Instead, Anand again offered why it is in the public's interest for the OAG to disclose them, and asserted that the OAG's refusal to produce the documents to several different requesters was discriminatory. *See id.* Further, the OAG's RTKL appeals officer agreed with the OAG that Anand's Request items 2-5 were insufficiently specific in that they had an unclear subject matter, a long timeframe, and an unspecified scope. *See id.* Anand filed a petition for review which invoked both this Court's appellate and original jurisdiction.[10]

---

[9] The OAG's RTKL appeals officer declared: "Because th[e] [criminal investigative] exemption also encompasses records made confidential by law or court order, [it would] not otherwise discuss the exemptions asserted under the Investigating Grand Jury Act, CHRIA, and HIPPA." Final Determination at 5.

[10] Anand "seeks both reversal of the [] Final Determination and an order or injunction directing the [OAG] to disclose the withheld records. Because it is a dual jurisdiction matter, this Court docketed [Anand's] petition for review as one filed in our original jurisdiction." *Anand v. Pa. Ins. Dep't*, 329 A.3d 1, 10 (Pa. Cmwlth. 2024) (*Anand II*) (record citation and footnote omitted). Anand also requests that the "trial court conduct an evidentiary hearing." *See* Petition for Rev. at 47.

> [T]he procedures relating to RTKL requests submitted to the OAG differ from those applicable to most other agencies. However, as in other RTKL appeals, our standard of review remains *de novo*. *See* P[a.] Off[.] of Att[*'y*] Gen[.] v. Phila[.] Inquirer, 127 A.3d 57, 60 (Pa. Cmwlth. 2015) (citing *Meguerian v. Off[.] of the Att['y] Gen[.]*,

**Discussion**

Initially, the RTKL mandates:

> [A] "Commonwealth agency [(i.e., the OAG)[11]] shall provide public records in accordance with [the RTKL]." [Section 301(a) of the RTKL,] 65 P.S. § 67.301[(a)]. A record "in the possession of [a] Commonwealth agency . . . shall be presumed to be a public record" unless it is exempt under Section 708 [of the RTKL], privileged, or exempt from disclosure under other federal or state law or judicial order. [Sections 305(a) and 701 of the RTKL, 65 P.S.] §§ 67.305(a), 67.701. At the initial request stage, an agency is required to assess the public status of requested records, and, if applicable, specify reasons for denying access with "citation of supporting legal authority." [Section 903 of the RTKL, 65 P.S.] § 67.903.

*McKelvey v. Pa. Dep't of Health*, 255 A.3d 385, 400 (Pa. 2021). Therefore,

> [u]pon receipt of a request, an open records officer "must make a good faith effort to determine whether: (1) the record is a public record; and[] (2) the record is in the possession, custody, or control of the agency." *Breslin v. Dickinson Twp.*, 68 A.3d 49, 54 (Pa. Cmwlth. 2013) (citing *Barkeyville Borough [v. Stearns]*, 35 A.3d [91,] 96 [(Pa. Cmwlth. 2012)]). Section 901 [of the RTKL, 65 P.S. § 67.901,] also includes the duty to perform a reasonable search for records in good faith. *Dep't of Lab[.] & Indus. v. Earley*, 126 A.3d 355 (Pa. Cmwlth. 2015).

*Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 185 A.3d 1161, 1171 (Pa. Cmwlth. 2018) (*Uniontown Newspapers I*), *aff'd*, 243 A.3d 19 (Pa. 2020).

"An agency may meet its burden [of proving a good faith search] through an unsworn attestation or a sworn affidavit." *Glob. Tel\*Link Corp. v.*

---

86 A.3d 924, 927 n.4 (Pa. Cmwlth. 2013)) ("This Court exercises *de novo* review of appeals officers' decisions under the RTKL pertaining to Commonwealth agencies.").

*Haverstick v. Pa. Off. of Att'y Gen.*, 273 A.3d 600, 604 n.4 (Pa. Cmwlth. 2022).

[11] "The [OAG] is a Commonwealth agency . . . ." *Piehl v. City of Phila.*, 930 A.2d 607, 614 (Pa. Cmwlth. 2007), *aff'd*, 987 A.2d 146 (Pa. 2009).

9

*Wright*, 147 A.3d 978, 980 (Pa. Cmwlth. 2016) (quoting *W. Chester Univ. of Pa. v. Schackner*, 124 A.3d 382, 393 (Pa. Cmwlth. 2015)).  "The affidavits must be detailed, nonconclusory, and submitted in good faith. . . .  Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned." *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014) (quoting *Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (*en banc*)).

> Moreover,

> [i]f "the requested information is exempt under Section 708(b) [of the RTKL], the information is not a 'public record' and is exempt from disclosure in its entirety." *Dep't of Lab*[.] *& Indus. v. Simpson*, 151 A.3d 678, 684 (Pa. Cmwlth. 2016).  Accordingly, exemptions must be narrowly construed, and the agency claiming the exemption bears the burden of proof by a preponderance of the evidence.[12]  *See* 65 P.S. § 67.708(a); *see also* [*Off. of Dist. Att'y of Phila. v.*] *Bagwell*[, 155 A.3d 1119 (Pa. Cmwlth. 2017)]; *Pa. Off*[.] *of Inspector Gen. v. Brown*, 152 A.3d 369 (Pa. Cmwlth. 2016); *Simpson*.

*Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 180 (Pa. Cmwlth. 2019) (footnote omitted).

## 1. Criminal Investigation Exemption

### a. Request items 1(a)-(e)

Anand argues that the OAG unlawfully and in bad faith withheld Request items 1(a)-(e) on the basis that they were exempt from production under the RTKL and other state and federal confidentiality statutes.

---

[12] "A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to a more likely than not inquiry." *Del. Cnty. v. Schaefer ex rel. Phila. Inquirer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012).

> A requester bears the burden of proving an agency committed bad faith. Evidence of bad faith is required. [*See*] *Barkeyville Borough v. Stearns*, 35 A.3d 91 (Pa. Cmwlth. 2012). . . . Evidence of an agency's failure to perform its mandatory duties, including a failure to search its records prior to a denial of access, may suffice. [*See Chambersburg Area Sch. Dist. v.*] *Dorsey*[, 97 A.3d 1281 (Pa. Cmwlth. 2014)]; *accord* [*Parsons v. Pa. Higher Educ. Assistance Agency* (]*PHEAA*[), 910 A.2d 177 (Pa. Cmwlth. 2006)].

*Uniontown Newspapers I*, 185 A.3d at 1170-71 (citation omitted).

Here, the OAG represented that it conducted a good faith search and found records responsive to Request items 1(a)-(e), but determined that they were exempt from disclosure pursuant to, *inter alia*, Section 708(b) of the RTKL, which specifies, in relevant part:

> [T]he following are exempt from access by a requester under [the RTKL]:
>
> . . . .
>
> (16) A record of an agency relating to or resulting in a criminal investigation, including:
>
> > . . . .
> >
> > (ii) Investigative materials, notes, correspondence, videos[,] and reports.
> >
> > . . . .
> >
> > (iv) A record that includes information made confidential by law or court order.
> >
> > . . . .
> >
> > (vi) A record that, if disclosed, would do any of the following:
> >
> > > (A) Reveal the institution, progress[,] or result of a criminal investigation, except the filing of criminal charges.

11

65 P.S. § 67.708(b). "To withhold a record under Section 708(b)(16) [of the RTKL], [the agency] only need[s] to show that the record related to a criminal investigation, period."[13] *Castillo v. Pa. State Police*, 310 A.3d 831, 835 (Pa. Cmwlth. 2024); *see also Barros v. Martin*, 92 A.3d 1243, 1250 (Pa. Cmwlth. 2014) ("[I]f a record, on its face, relates to a criminal investigation, it is exempt under the RTKL pursuant to Section 708(b)(16)(ii).").

> In Request items 1(a)-(e), Anand sought:

> All data and documents since year 1990, at [the OAG] concerning the identities of past and/or present[] physicians or health care providers that have been arrested or[] prosecuted criminally, or convicted after referral and/or provision of controlled substance medication prescribing data by an Independence Company and/or provision of health care billing data by an Independence Company for [five specified crimes].

C.R. at 5. Not only does the Request, on its face, clearly seek criminal investigative records, but Madigan attested in her affidavit that MFCS's search revealed three investigations that fit the parameters of Anand's Request, all of which were conducted before a grand jury and subject to CHRIA's clean slate/limited access provisions. *See* C.R. at 1. Madigan declared that "[a]ll records in the OAG['s]/MFCS'[s] possession are investigative records related to the filing of criminal charges[,]" C.R. at 302, and "the items requested are information assembled as a result of MFCS'[s] inquiry into a criminal incident or an allegation of wrongdoing." C.R. at 303.

---

[13] "[W]here a record falls within an exemption under Section 708(b) [of the RTKL], it is not a public record as defined by the RTKL and an agency is not required to redact the record." *Castillo v. Pa. State Police*, 310 A.3d 831, 836 (Pa. Cmwlth. 2024) (quoting *Pa. State Police v. Off. of Open Recs.*, 5 A.2d 473, 481 (Pa. Cmwlth. 2010)).

LaBar also attested that "[t]he Insurance Fraud Section's official duties include, but are not limited to, conducting criminal investigations into all types of insurance fraud[,]" C.R. at 306, and it refers regulatory violations to the Pennsylvania Insurance Department for investigation. *See* C.R. at 307. LaBar stated that he was aware of three cases the Insurance Fraud Section prosecuted during his tenure that fit the Request's parameters, two of which were before a grand jury and subject to the Investigative Grand Jury Act, and the third one involved an investigation into Dr. Howard Bloom, who was charged and ultimately prosecuted for insurance fraud and theft by deception. *See* C.R. at 308-309. He concluded the related records contained criminal investigative materials. *See* C.R. at 309.

Anand has not introduced any evidence that undermines the veracity of Madigan's and/or LaBar's affidavits, and this Court has no basis on which to conclude that they are not credible. In addition, Section 1101(a)(1) of the RTKL requires that a requester appealing from an agency's exemption claim "state the grounds upon which the requester asserts that the record is a public record . . . ." 65 P.S. § 67.1101(a)(1). In his appeal, Anand clarified:

> Anand was seeking information concerning the [OAG] manners and methods of criminally prosecuting Pennsylvania physicians and healthcare providers who violate criminal statutes as identified and/or referred by the "Independence Companies" . . . . [] Anand asked for specific information pertaining to, OAG-OAG Health Care Sections (HCS)-Independence Companies, joint task force operations of the Healthcare Fraud Preventive Partnership (HFPP) in criminal cases against Pennsylvania healthcare providers and physicians. [] Anand simply and solely desired the identities of criminally indicted and/or prosecuted Pennsylvania physicians and healthcare providers[] (analogous to a "Schindler's [L]ist") by the OAG subsequent to a referral or involvement by an Independence Company.

C.R. at 248.

13

Anand challenged the OAG's invoking of the criminal investigative exemption, stating:

> [E]xemptions . . . concerning the Independence Companies do[] not apply because the records requested essentially contain purely factual information and because the records are no longer part [sic] ongoing systemic or searching inquiry or an official probe and/or deliberations by the OAG. The vast majority of criminally charged and prosecuted physicians and healthcare providers by the OAG since 1990 have been judicially resolved and should be of unsealed public record subject to [sic] RTKL.

C.R. at 238; *see also* C.R. at 251-252. Anand also asserted that, as a matter of public policy, releasing the information "will prevent future Pennsylvania criminal activity by Pennsylvania physicians and healthcare providers." *Id*.

However, "[a]n explanation of why a requester believes an agency should disclose records to him does not satisfy the requirement in Section 1101(a) [of the RTKL] to explain why the requested records are public and available to everyone." *Padgett v. Pa. State Police*, 73 A.3d 644, 647 (Pa. Cmwlth. 2013). Moreover, "[c]riminal investigative records remain exempt from disclosure under the RTKL even after the investigation is completed." *Barros*, 92 A.3d at 1250; *see also Castillo*, 310 A.3d at 835 ("[T]he status or 'staleness' of a criminal matter is not relevant for disclosure purposes."). Further, when Anand made similar records requests in *Anand v. Office of Attorney General* (Pa. Cmwlth. No. 663 C.D. 2022, filed Nov. 20, 2023), *appeal denied*, (Pa. No. 669 MAL 2023, filed June 17, 2024) (*Anand I*), this Court concluded: "Although Anand does not request actual internal investigation materials, these records nevertheless related to or resulted in a criminal investigation and, if disclosed, would reveal the institution, progress, or result of a criminal investigation prior to the filing of criminal charges, pursuant to the RTKL's criminal investigation exemption." *Anand I*, slip op. at 19.

14

In addition,

> Anand has not shown that the OAG's affidavits of non-possession or non-existence were made in bad faith or that competent evidence exists to refute their assertions. *See Mahon*; *Hodges*. . . . As the affidavits provided sufficient evidence of [the] OAG's non-possession of records sought by Anand, the [OAG] did not err in this regard.

*Anand I*, slip op. at 26. Accordingly, narrowly construing the exemption as this Court must, this Court holds that the OAG's RTKL appeals officer did not err by concluding that the OAG properly withheld Request items 1(a)-(e) on the basis that they were exempt from production under Section 708(b)(16) of the RTKL.

### b. Request items 2-5

Anand also asserts that the OAG unlawfully and in bad faith denied Request items 2-5 based on lack of specificity and the criminal investigative exemption in Section 708(b)(16) of the RTKL.[14]

Section 703 of the RTKL states: "A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested . . . ." 65 P.S. § 67.703. This Court has explained:

> In determining whether a request is sufficiently specific, an agency should rely on the common meaning of words and phrases, be mindful of the remedial purpose of the RTKL, and construe the specificity of the request in the context of the request, rather than envisioning everything the request might conceivably encompass. The fact that a

---

[14] In his clarified Request, Anand expanded his original Request from 4 to nearly 100 categories of documents, which he was not permitted to do. *See McKelvey v. Off. of Att'y Gen.*, 172 A.3d 122, 125 (Pa. Cmwlth. 2017) ("Once a[n] RTKL request is submitted, the requester may not expand or modify the request on appeal."); *see also Smith Butz, LLC v. Dep't of Env't Prot.*, 142 A.3d 941 (Pa. Cmwlth. 2016). Therefore, this Court limits its review to the original Request items 2-5.

15

request is burdensome will not, in and of itself, deem the request to be overbroad. However, an open-ended request that fails to give a[n] [] agency guidance in its search for the information sought may be so burdensome that the request will be found overbroad under the RTKL.

*Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1142-43 (Pa. Cmwlth. 2017) (citations omitted). Therefore,

[w]hen considering a challenge to the specificity of a request under Section 703 of the RTKL, this Court employs a three-part balancing test, examining the extent to which the request sets forth[:] (1) the subject matter of the request; (2) the scope of documents sought; and (3) the timeframe for which records are sought.

*Pa. Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121, 1124 (Pa. Cmwlth. 2015).

In Request items 2-5, Anand sought "[a]ll data and documents since year 1990 at [the OAG] concerning the identities of . . . physicians or health care providers [who] have been arrested, [] prosecuted criminally, or convicted[.]"

2. . . . with controlled substance medication prescribing data provided by an Independence Company[,] including but not limited to[,] opioid, benzodiazepine, or muscle relaxant[] medications data.

3. . . . after[] controlled substance medication prescribing data[] was provided by an Independence Company pertaining to particular[] patients/Independence Company [m]embers.

4. . . . after medication tracking data or pharmacy prescribing data was provided by an Independence Company pertaining to particular[] patients/Independence Company [m]embers.

5. . . . after referral by an Independence Company for concerns about the relationship between physicians and/or pharmacies[,] including but not limited to[,] Medicaid pharmacy providers.

16

C.R. at 6.

Rather than the *Schindler's List* Anand claims he desires, Request items 2-5 seek *all data and documents* that may in some way *concern* provider identities since 1990, which encompassed every piece of paper or data entry with the subject's name on it. According to Madigan's affidavit, MFCS is unable to search for cases in which it obtained controlled substances medication prescribing data and/or health care billing data because it neither tracks the types of records Anand seeks, nor from whom they were requested/received, and, thus, they are not readily identifiable.[15] *See* C.R. at 302. Madigan explained that, in order to satisfy the Request, it would take months for the MFCS staff to review every internal file, folder, and data in each case file to determine if the MFCS obtained controlled substance medication prescribing and/or health care billing data, then further search to see whether the data was from an Independence Company.[16] *See id.*

LaBar similarly attested that, because the Insurance Fraud Section does not track records related to entities and/or types of records received, it cannot search for each case in which the Insurance Fraud Section obtained controlled substances medication prescribing and/or health billing data. *See* C.R. at 309. He explained that the Insurance Fraud Section has prosecuted approximately 6,000 cases over the past 30 years, the case file for each of which contains hundreds to thousands of pages of documents including court filings, insurance claim files, witness interviews, and investigative reports, etc. *See id.* LaBar represented that a hand search of each case

---

[15] According to Section 705 of the RTKL, "an agency shall not be required to create a record which does not currently exist or to compile, maintain, format[,] or organize a record in a manner in which the agency does not currently compile, maintain, format[,] or organize the record." 65 P.S. § 67.705.

[16] Madigan represented that for the time period that MFCS has retained records in paper and electronic formats, it has arrested 1,451 individuals. One investigative file pertinent to one of those arrests contains 10,383 internal files, 1,748 folders, and 30.5 gigabytes of data. *See* C.R. at 302.

file would be impossible under the RTKL's deadlines. *See id*. Anand does not dispute Madigan's or LaBar's representations in that regard.

Notwithstanding that the MFCS and the Insurance Fraud Section could not undertake the extraordinarily broad searches invoked by Anand's Request items 2-5, Madigan related that, even if MFCS undertook the searches, it could not disseminate the resulting records because they "are investigative records related to the filing of criminal charges" under the RTKL, and/or are subject to the Investigating Grand Jury Act, CHRIA, and/or HIPAA. *See* C.R. at 303-305; *see also* C.R. at 301 ("The search for requested records in [the] MFCS files revealed that all requested records relate to criminal investigations conducted by the MFCS."). LaBar also declared that, even if the Insurance Fraud Section searched for the requested documents, the resulting records are investigative in nature, contain treatment information, and/or are subject to grand jury secrecy requirements and, therefore, are subject to the Investigating Grand Jury Act, CHRIA, and/or HIPAA. *See* C.R. at 309-311. Anand did not offer any evidence to the contrary.

Where, as in this case, Anand's Request items 2-5 expressly seek documentation identifying "physicians or health care providers [who] have been arrested, [] prosecuted criminally, or convicted[,]" in each of the specified circumstances, C.R. at 6, related documents are criminal investigative materials not subject to disclosure under Section 708(b)(16) of the RTKL. Accordingly, narrowly construing the exemption as this Court must, this Court holds that the OAG's RTKL appeals officer did not err by concluding that the OAG properly withheld Request items 2-5 on the basis that they were exempt from production under Section 708(b)(16) of the RTKL.

## 2. Governmental Function

Anand also asserts that the records he seeks are subject to disclosure on the basis that the Independence Companies engaged in governmental functions on the OAG's behalf. He specifically contends that the OAG's MFCS is in a joint partnership with Independence Blue Cross through the HFPP; as HFPP joint partners, the MFCS and Independence Blue Cross are third-party beneficiaries of criminal asset forfeitures obtained through joint operations against Pennsylvania physicians and Pennsylvania healthcare professionals; and Independence Blue Cross and the MFCS have either a contractual and/or implied contractual relationship whose documents are subject to disclosure under Section 506(d) of the RTKL, 65 P.S. § 67.506(d).

> Section 506(d)(1) of the RTKL states:
>
> A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has **contracted** to perform a **governmental function** on behalf of the agency, and which **directly relates to the governmental function** and is **not exempt** under this [RTKL], shall be considered a public record of the agency for purposes of this [RTKL].

65 P.S. § 67.506(d)(1) (emphasis added). Thus, if the OAG contracted with the Independence Companies to perform a government function, and the requested records directly relate to that government function and are not otherwise exempt, they are public records subject to disclosure.

> In this case, Madigan attested:
>
> The MFCS does not have any written contracts with any Independence Company and [the] Independence Companies do not perform state criminal government functions on behalf of the MFCS. Some Independence Companies contract with the state Medicaid [a]gency, the Pennsylvania Department of Human Services. The MFCS must be separate and distinct from the Medicaid [a]gency

19

pursuant to [Section 1007.9(a) of the Code of Federal Regulations,] 42 C.F.R. § 1007.9(a)[,] and may not, through consultant agreements or other contractual arrangements, rely on individuals not employed directly by the unit for the investigation or prosecution of cases pursuant to [Section 1007.1(g)(2) of the Code of Federal Regulations,] 42 C.F.R. § 1007.1(g)(2).

C.R. at 300-301. Anand did not produce any evidence to the contrary. Therefore, the record does not support Anand's claim that the OAG has contracted with the Independence Companies to perform any government function and, thus, the OAG did not have constructive possession of records to satisfy the Request. Even if such contractual relationship existed, because the documentation Anand seeks is exempt pursuant to Section 708(b)(16) of the RTKL, it is not ultimately subject to disclosure.

### 3. Mandamus, Enforcement Petition, Attorneys' Fees, and Costs

Anand also contends that he has satisfied the legal requirements for mandamus or a petition to enforce, and that he is entitled to attorneys' fees and costs. In *Anand I*, this Court explained:

> The common law writ of mandamus lies to compel the performance of a ministerial act or mandatory duty. *Baron v. Pa. Dep't of Hum. Servs.*, 169 A.3d 27 1268, 1272 (Pa. Cmwlth. 2017). "Mandamus is not available to establish legal rights but only to enforce rights that have been established." *Id*. The other means in the RTKL context by which production of documents ordered to be disclosed may be compelled is a petition to enforce. *Capinski v. Upper Pottsgrove Twp.*, 164 A.3d 601, 606-07 (Pa. Cmwlth. 2017). The difference between the two is that a mandamus action is appropriate when a[n] RTKL final determination has not been appealed whereas a petition to enforce is appropriate when an appeal has been taken; in both instances, a right to enforce production has been established. *McFalls v. Mun. of Norristown* (Pa. Cmwlth.[] No. 737 C.D. 2021, filed May 17, 2022), slip op. at 6-7 . . . (unreported) (discussing *Capinski*).

Attorney[s'] fees are available under Section 1304(a) of the RTKL as follows:

> (a) Reversal of agency determination.--If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney[s'] fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:
>
> (1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of th[e RTKL]; or
>
> (2) the exemptions, exclusions[,] or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

> 65 P.S. § 67.1304(a).  However, RTKL attorney[s]' fees are not available to pro se litigants. *Maurice A. Nernberg & Assocs. v. Coyne*, 920 A.2d 967, 972 (Pa. Cmwlth. 2007).

*Anand I*, slip op. at 26-27.

> The *Anand I* Court concluded:

> Because the [OAG] did not err in concluding that no further disclosure is required from the OAG, relief in the form of either a mandamus or petition to enforce is not warranted here.  Both require an established right to disclosure, which Anand has not established.  Likewise, because Anand has not prevailed (and is pro se), attorneys' fees are not warranted here.

*Anand I*, slip op. at 28; *see also Anand v. Pa. Ins. Dep't*, 329 A.3d 1 (Pa. Cmwlth.

2024) (*Anand II*) (dismissing Anand's mandamus and enforcement petition claims).

21

**Conclusion**

Based on the foregoing, this Court affirms the OAG's RTKL appeals officer's Final Determination and dismisses the Petition.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neil Anand,                               :
          Petitioner              :
                              :
       v.                          :
                              :
Commonwealth of Pennsylvania              :
Pennsylvania Office of                    :
Attorney General,                         :   No. 493 M.D. 2022
          Respondent              :

## O R D E R

AND NOW, this 25th day of September, 2025, the Office of Attorney General's Right-to-Know Law appeals officer's August 31, 2022 Final Determination is AFFIRMED. Neil Anand's Petition for Writ of Mandamus and/or Petition to Enforce is DISMISSED.

 

                              _____

                              ANNE E. COVEY, Judge